DECISION AND JUDGMENT ENTRY
{¶ 1} Defendant-Appellant, Dale C. Burton, appeals from his conviction of theft, in violation of RC. 2913.02, a fifth degree felony, after a jury trial in the Ross County Court of Common Pleas. Appellant contends that 1) there was insufficient evidence upon which a jury could have convicted him; 2) the jury's verdict is against the manifest weight of the evidence; 3) the trial court erred in failing to grant his motion for dismissal pursuant to Crim.R 29 challenging proof of value; 4) if trial counsel failed *Page 2 
to renew the CrimR. 29 motion at the close of evidence, such failure does not bar review or reversal; and 5) if trial counsel failed to renew the CrimR. 29 motion at the close of evidence, such failure constitutes ineffective assistance of counsel. Because we find that the Appellant's conviction was supported by sufficient evidence and is not against the manifest weight of the evidence, we find Appellant's first and second assignments of error to be without merit. Further, because we find Appellant failed to preserve his CrimR 29(A) motion for acquittal by failing to renew his motion at the close of all evidence, and in light of our finding that the State provided sufficient proof that the value of the item that was the subject of the theft was in excess of $500.00, we find Appellant's third, fourth and fifth assignments of error to be without merit. Accordingly, we affirm Appellant's conviction.
 I. Facts {¶ 2} Charles Henneberger purchased a new Yamaha four-wheeler in 1998 for between $5,500.00 and $5,800.00. During the time that the four-wheeler was in Mr. Henneberger's possession, he and his wife used the four-wheeler around their house and yard, primarily to pull a wood cart, plant flowers and to take their grandchildren for rides. *Page 3 
 {¶ 3} On August 24, 2004, Mr. Henneberger's four-wheeler was stolen from his garage when he was not at home. While Mr. Henneberger was gone from his home, his neighbors, Wesley and Kristy Alderman, were in the process of getting into their car to leave their house when Mr. Alderman noticed a pickup truck with three people in it pass by, heading in the direction of Mr. Henneberger's house.[1] The Aldermans proceeded to leave their house and when they drove by Mr. Henneberger's house, they noticed that his garage door was opened and his four-wheeler was parked next to the road. Mr. Alderman then witnessed the pickup truck he had seen earlier pull up to Mr. Henneberger's four-wheeler. Two men jumped out of the pickup truck and loaded the four-wheeler into the back of the truck. At this point, Mr. Alderman turned around in a neighboring driveway and drove back towards Mr. Henneberger's residence, parking his vehicle sideways in the road in an attempt to block the pickup truck from driving away; however, the driver of the truck maneuvered the truck through a ditch and around the Aldermans' vehicle.
 {¶ 4} As the truck drove around the Aldermans' vehicle, both Wesley and Kristy Alderman recognized the driver as Dale Burton, a former classmate of theirs. The Aldermans obtained the license plate number of the *Page 4 
truck, called the sheriffs office and were also able to provide the Sheriffs department with descriptions of the other two individuals in the truck. In the meantime, Mr. Henneberger was contacted and notified that his four-wheeler had been stolen.
 {¶ 5} The Sheriffs department was able to locate the truck used in the commission of the crime; however, the four-wheeler was never recovered. The truck was registered to Michael Barnes. When questioned about his truck, Michael Barnes stated that he had loaned the truck to his daughter, Constance Barnes. Constance Barnes in turn claimed that she traded vehicles with her cousin, Ricky Smith[2], on the day in question. Ricky Smith later admitted to being in possession of the truck but refused to provide details.
 {¶ 6} Appellant, Dale C. Burton, was indicted on one count of Theft, a fifth degree felony, in violation of R.C. 2913.02 in connection with these events. During the two-day jury trial, Mr. Henneberger testified that he purchased his four-wheeler in 1998, new, for between $5,500.00 and $5,800.00. He also testified that it was in good condition at the time it was stolen, with the exception of a broken tail light. Both Wesley and Kristy Alderman testified that the driver of the truck was Dale Burton, explaining *Page 5 
that they recognized him as a former classmate of theirs through middle school and high school. They also picked Dale Burton out of a lineup and identified him in court. Additionally, the State put on expert testimony via Mickey J. Long. Mr. Long testified that he had sold over 350 new and used ATVs while working at All Terrain Sports in Chillicothe, Ohio, and that the resale value of a four-wheeler such as Mr. Henneberger's, in good condition and taking the busted tail light into consideration, would be approximately $2,100.00. He further testified that such a four-wheeler would be substantially in excess of $500.00, unless it had been totally destroyed.
 {¶ 7} Appellant moved for acquittal pursuant to Crim. R. 29 at the close of the State's evidence, which was denied by the trial court. Appellant then provided two of his neighbors as alibi witnesses, who were able to testify that Appellant was at his home between noon and 1:00 p.m. and then from 6:30 p.m. on, on the day in question, but were unable to account for Appellant's whereabouts in between those times. Appellant testified on his own behalf, claiming that he was home all day playing X-box. He claimed that his girlfriend, Katherine McCoy and his friend, Mike Bates, were with him however, neither of these individuals testified at trial.
 {¶ 8} Appellant did not renew his CrimR. 29 motion for acquittal at the close of his own case, and the matter was submitted to the jury for *Page 6 
deliberations. The jury returned a verdict finding Appellant guilty as charged. Although Appellant did not initially appeal his conviction, this Court granted Appellant's motion for leave to file a delayed appeal. Appellant now assigns the following errors for our review.
 II. Assignments of Error {¶ 9} "I. THERE WAS INSUFFICIENT EVIDENCE UPON WHICH A JURY COULD HAVE CONVICTED THE DEFENDANT.
 {¶ 10} II. THE JURY'S VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 11} III. THE TRIAL COURT ERRED IN FAILING TO GRANT BURTON'S MOTION FOR DISMISSAL PURSUANT TO RULE OF CRIMINAL PROCEDURE 29 CHALLENGING PROOF OF VALUE.
 {¶ 12} IV. IF TRIAL COUNSEL FAILED TO RENEW BURTON'S RULE OF CRIMINAL PROCEDURE 29 MOTION AT THE CLOSE OF EVIDENCE, SUCH FAILURE DOES NOT BAR REVIEW OR REVERSAL.
 {¶ 13} V. IF TRIAL COUNSEL FAILED TO RENEW BURTON'S RULE OF CRIMINAL PROCEDURE 29 MOTION AT THE CLOSE OF EVIDENCE, SUCH FAILURE CONSTITUTES INEFFECTIVE ASSISTANCE OF COUNSEL."
 III. Legal Analysis {¶ 14} In his first assignment of error, Appellant contends that there was insufficient evidence upon which the jury could have convicted him. In support of this contention, Appellant argues that the Aldermans' testimony is *Page 7 
in contrast with the testimony of his own witnesses, who testified that he was at home all day. Appellant also contends that the Aldermans could not have recognized him in such a short amount of time and when they had not seen him since high school. Appellant further contends that the State failed to prove the value of the stolen four-wheeler.
 {¶ 15} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id., citing Jackson v.Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781.
 {¶ 16} Thus, we must consider the elements of theft, as provided in R.C. 2913.02, which states as follows:
"(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
(1) Without the consent of the owner or person authorized to give consent; *Page 8 
(2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;
(3) By deception;
(4) By threat;
(5) By intimidation."
Further, R.C. 2913.02 provides in section (B)(2) that:
"* * * If the value of the property or services stolen is five hundred dollars or more and is less than five thousand dollars * * * a violation of this section is theft, a felony of the fifth degree."
 {¶ 17} It is undisputed that Mr. Henneberger did not give anyone, certainly not Appellant, permission to take or use his four-wheeler. With respect to Appellant's claims regarding his alibi, the record reveals the following facts: 1) Appellant's neighbor, Eric Miller, testified that he saw Appellant between 12:30 p.m. and 1:00 p.m. on the afternoon of August 24th,[3] and then again around 6:30 p.m. or 7:00 p.m., and that Appellant only left once during the day, in order to go to the store, and was back within five minutes; 2) Eric Miller based his testimony that Appellant was home all day on the fact that he saw Appellant's car in the parking lot; 3) Appellant's neighbor, Heather Jones, testified that she had no contact with Appellant between 12:30 p.m. and 6:00 p.m. on August 24, 2004, but believed that he *Page 9 
was home because his car was in the parking lot; 4) Heather Jones conceded that her only basis for saying Appellant was home was because she didn't see him leave; 5) Appellant testified that he was home all day long playing X-box, and that his girlfriend, Katherine McCoy, and his friend, Mike Bates, were there with him; 6) Curiously, neither of these alibi witnesses testified at trial.
 {¶ 18} With respect to Appellant's challenges to the State's eyewitness testimony, a review of the record reveals the following: 1) Wesley and Kristi Alderman were eyewitnesses to the theft and identified Appellant as the perpetrator of the crime; 2) The Aldermans both immediately recognized Appellant, as their former middle school and high school classmate; 4) The Aldermans' identification of Appellant occurred during daylight hours and from a distance of only approximately four feet away; and 5) The Aldermans picked Appellant out of a lineup and also identified him in court during trial.
 {¶ 19} Based upon our review of the above testimony, we find Appellant's challenge to the sufficiency of the State's evidence placing him at the scene of the crime and to the State's eyewitness testimony to be without merit. We conclude that the State's evidence, if believed, would *Page 10 
convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks, supra.
 {¶ 20} However, we must also consider Appellant's challenge to the sufficiency of the evidence regarding the proof of the value of the stolen four-wheeler. As previously set forth, R.C. 2913.02 requires the State to prove that the value of the stolen property is more than $500.00 and less than $5,000.00 in order to charge Appellant with a fifth degree felony theft offense. As the trial court correctly noted, R.C. 2913.61 provides a framework for determining the value of stolen property. Specifically, R.C. 2913.61(D) is controlling in the case sub judice and provides in (D)(3) that:
"The value of any real or personal property that is not covered in division (D)(1)[4] or (2)[5] of this section, and the value of services, is the fair market value of the property or services. As used in this section, "fair market value" is the money consideration that a buyer would give and a seller would accept for property or services, assuming that the buyer is willing to buy and the seller is willing to sell, that both are fully informed as to all facts material to the transaction, and that neither is under any compulsion to act."
R.C. 2913.61 also provides in (A) that:
[i]n any case in which the jury or court determines that the value of the property or services at the time of the offense was five hundred dollars or more, it is unnecessary to find and return the exact value, and it is sufficient if the finding and return is to the effect that the value of the property or services involved was five hundred dollars or more and less than five thousand dollars." *Page 11 
Thus, the State was required to prove that the fair market value of the stolen four-wheeler was between $500.00 and $5,000.00, but did not necessarily have to prove the exact fair market value. In order to establish the value of the stolen four-wheeler, the State offered the testimony of Mr. Henneberger, the owner of the four-wheeler, and Mickey J. Long, an ATV salesman.
 {¶ 21} "It is a general rule of evidence that before one may testify as to his opinion on the value of property, one must qualify as an expert." Tokles Son, Inc. v. Midwestern Indemnity Co. (1992),65 Ohio St.3d 621, 605 N.E.2d 936, at paragraph one of the syllabus; citingState Auto Mut. Ins. Co. v. Chrysler Corp. (1973), 36 Ohio St.2d 151,304 N.E.2d 891. "As an exception to the general rule, an owner is permitted to testify concerning the value of his property without being qualified as an expert, because he is presumed to be familiar with it from having purchased or dealt with it." Tokles at paragraph two of the syllabus, citing Bishop v. East Ohio Gas Co. (1944), 143 Ohio St. 54156 N.E.2d 164.
 {¶ 22} At trial, Mr. Henneberger testified that he purchased his four-wheeler brand new in 1998 for between $5,500.00 and $5,800.00. He also testified that the four-wheeler was in good condition at the time that it was stolen, with the exception of a broken tail light. Mickey J. Long, a new and used ATV salesman at a local dealership, testified that in his opinion a four-wheeler *Page 12 
such as Mr. Henneberger's, in good condition, taking into consideration the busted tail light, would have a resale value of approximately $2,100.00. He further testified that a 1998 four-wheeler, such as Mr. Henneberger's, would be worth substantially in excess of $500, unless it had been totally destroyed.
 {¶ 23} We conclude that Mr. Henneberger's and Mr. Long's testimony, if believed, demonstrate that the value of the stolen four-wheeler was between $500.00 and $5,000.00. Thus, after viewing the evidence in a light most favorable to the prosecution, we conclude that any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks, supra: citingJackson v. Virginia, supra. Accordingly, we find Appellant's first assignment of error to be without merit.
 {¶ 24} In his second assignment of error, Appellant contends that the jury's verdict was against the manifest weight of the evidence. In support of his contention, and as in his first assignment of error, Appellant challenges the testimony of Wesley and Kristy Alderman, arguing that they could not have identified the driver of the truck during such a brief exchange. Appellant also argues that there is no physical evidence tying him to the *Page 13 
crime and again cites the testimony of his alibi witnesses, which he claims establishes that he was at home all afternoon on the day of the theft.
 {¶ 25} Although a verdict is supported by sufficient evidence, a court of appeals may nevertheless conclude that the verdict is against the manifest weight of the evidence. State v. Banks (1992),78 Ohio App.3d 206, 214, 604 N.E.2d 219. A sufficiency of the evidence challenge tests whether the state's case is legally adequate to go to a jury in that it contains prima facie evidence of all of the elements of the charged offense. State v. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717
and Carter v. Estell (C.A. 5, 1982), 691 F.2d 777, 778. A weight of the evidence argument merely tests the rational adequacy, i.e. persuasiveness of the evidence. The two tests are distinct, notwithstanding dicta to the contrary in State v. Jenks, supra. SeeState v. Thompkins (1997), 78 Ohio St.3d 380, 390, 1997-Ohio-52,678 N.E.2d 541 (Justice Cook, concurring).
 {¶ 26} When considering an appellant's claim that a conviction is against the manifest weight of the evidence, our role is to determine whether the evidence produced at trial "attains the high degree of probative force and certainty required of a criminal conviction."State v. Getsy (1998), 84 Ohio St.3d 180, 193, 1998-Ohio-533,702 N.E.2d 866. The reviewing court sits, essentially, as a "thirteenth juror" and [may] disagree with the fact *Page 14 
finder's resolution of the conflicting testimony." State v.Thompkins at 387 (quoting Tibbs v. Florida (1982), 457 U.S. 31, 42,102 S.Ct. 2211. The reviewing court must dutifully examine the entire record, weighing the evidence and considering the credibility of witnesses, keeping in mind that credibility generally is an issue for the trier of fact to resolve. State v. Thomas (1982), 70 Ohio St.2d 79,80, 434 N.E.2d 1356; State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212, paragraph one of the syllabus. The reviewing court may reverse the conviction if it appears that the fact finder, in resolving evidentiary conflicts, "`clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Thompkins at 387 (quoting State v. Martin, supra). On the other hand, we will not reverse a conviction if the state presented substantial evidence upon which the trier of fact could reasonably conclude that all essential elements of the offense had been established beyond a reasonable doubt. State v. Eley (1978),56 Ohio St.2d 169, 383 N.E.2d 132, syllabus.
 {¶ 27} After our review of the evidence, we believe Appellant's conviction is supported by the weight of the evidence. First, we conclude that Appellant's alibi witnesses, while able to testify regarding Appellant's whereabouts between 12:00 p.m. and 1:00 p.m. and then again between 6:00 *Page 15 
p.m. and 7:00 p.m. on the day in question, had no basis for concluding that Appellant did not leave his apartment at any time in between, other than their belief that his car remained parked in the parking lot the whole time. In fact, whether Appellant's car was parked in the parking lot or not has no bearing on whether Appellant may have actually left his apartment, considering that the State's witnesses placed Appellant, not in his own vehicle while committing the theft offense, but rather in a borrowed pick up truck owned by Michael Barnes. We are also mindful of Appellant's own testimony that two individuals were with him in his apartment all day, but that Appellant failed to produce these individuals as alibi witnesses.
 {¶ 28} Secondly, we find more believable the testimony of Wesley and Kristy Alderman, who each unequivocally testified that they recognized Appellant to be the driver of the pickup truck on the day of the theft, picked Appellant out of a lineup and then made an in-court identification of Appellant during trial. The Aldermans' view of the driver was made from close range and in broad daylight. For these reasons, we find no merit to the claim that the conviction was against the manifest weight of the evidence. Accordingly, we overrule Appellant's second assignment of error.
 {¶ 29} In his third assignment of error, Appellant contends that the trial court erred in failing to grant his motion for dismissal pursuant to *Page 16 
Crim. R. 29, challenging proof of value. Crim. R. 29 governs motions for acquittal and provides that the court shall order a judgment of acquittal "if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court shall not enter a judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether the state has established, beyond a reasonable doubt, each essential element of the offense. See, e.g.State v. Bridgeman (1978), 55, Ohio St.2d 261, 381 N.E.2d 184, syllabus.
 {¶ 30} Thus, when an appellate court reviews a trial court's decision to overrule a motion for judgment of acquittal, the reviewing court focuses on the sufficiency of the evidence. See, e.g., State v.Carter (1995), 72 Ohio St.3d 545, 553, 1995-Ohio-104, 651 N.E.2d 965.;State v. Jenks at 273. When reviewing the sufficiency of the evidence, our inquiry focuses primarily upon the adequacy of the evidence, that is, whether the evidence, if believed, reasonably could support a finding of guilt beyond a reasonable doubt. See State v. Thomphns at 386 (stating that "sufficiency is the test of adequacy"); Jenks at 273. The standard of review is whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential element of the offense beyond a reasonable doubt. *Page 17 Jackson v. Virginia, supra; Jenks, supra. Furthermore, a reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." Thompkins at 390. Reviewing courts will not overturn convictions on sufficiency of evidence claims unless reasonable minds could not reach the conclusion that the trier of fact did. See State v.Tibbetts, 92 Ohio St.3d 146, 2001-Ohio-132, 749 N.E.2d 226; State v.Treesh (2001), 90 Ohio St.3d 460, 2001-Ohio-4, 739 N.E.2d 749.
 {¶ 31} Initially, we note that our review of the record indicates that Appellant failed to renew his Crim. R. 29(A) motion for judgment of acquittal at the close of all the evidence.[6] This Court has previously held that a defendant who is tried before a jury and brings a CrimR. 29(A) motion for acquittal at the close of the state's case waives any error in the denial of the motion if the defendant puts on a defense and fails to renew the motion for acquittal at the close of all the evidence. State v. Swain, Ross App. No. 01CA2591, 2002-Ohio-414; citing State v. Miley (1996), 114 Ohio App.3d 738, 684 N.E.2d 102. See,State v. Roe (1989), 41 Ohio St.3d 18, 25, 535 N.E.2d 1351; State v.Hicks (Dec. 29, 1997), Ross App. No. 2292. See, also, State v.Barnett (1990), 67 Ohio App.3d 760, 588 NE.2d 887 *Page 18 
(holding the waiver doctrine applicable where appellant failed to renew his motion for acquittal after presenting his defense).
 {¶ 32} As such, and for the same reasons that we overruled Appellant's first assignment of error, we overrule Appellant's third assignment of error.
 {¶ 33} In his fourth assignment of error, Appellant contends that if trial counsel failed to renew his Crim. R. 29(A) motion for acquittal at the close of all evidence, such failure does not bar review or reversal. Appellant concedes that generally, the failure to renew a CrimR. 29(A) motion for acquittal at the close of all evidence results in a waiver of that argument on appeal; however, Appellant asserts that such error constitutes plain error and asks this court to review his claim under that doctrine. We disagree with Appellant's assertion.
 {¶ 34} Considering our disposition of Appellant's first, second and third assignments of error and our determination that Appellant's conviction was not only supported by sufficient evidence, but also was not against the manifest weight of the evidence, we cannot conclude that plain error exists as a result of Appellant's trial counsel's failure to renew the Crim. R. 29(A) motion at the close of all evidence. Accordingly, we overrule Appellant's fourth assignment of error. *Page 19 
 {¶ 35} In his fifth and final assignment of error, Appellant contends that if trial counsel failed to renew his Crim. R. 29(A) motion for acquittal at the close of all evidence, such failure constitutes ineffective assistance of counsel. However, we disagree.
 {¶ 36} The Supreme Court of Ohio dealt with the issue of ineffective assistance of counsel in State v. Smith (1985), 17 Ohio St.3d 98,477 N.E.2d 1128. In Smith, the court held:
"* * * In Strickland v. Washington (1984), 466 U.S. 668, the United States Supreme Court adopted a two-pronged analysis for determining whether counsel's assistance was so defective as to require reversal of a conviction:
 First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show the deficient performance prejudiced the defense. This requires showing the counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
 The court also noted that counsel is `strongly presumed' to have rendered adequate assistance, and `the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy".'"
See, also, State v. Taylor (1997), 78 Ohio St.3d 15, 1997-Ohio-243,676 N.E.2d 82; State v. Bradley (1989), 42 Ohio St.3d 137, 538 N.E.2d 373;State v. Brown (1988), 38 Ohio St.3d 305, 528 N.E.2d 523. In order to show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it *Page 20 
not for counsel's errors, the result of the trial would have been different. Bradley, supra, at 143. Prejudice from defective representation is sufficient to justify reversal only when the result of the trial was unreliable or the proceeding was fundamentally unfair because of trial counsel's performance. Lockhart v. Fretwell (1993),506 U.S. 364, 113 S.Ct. 838.
 {¶ 37} We have already determined that Appellant's conviction was supported by sufficient evidence and was not against the manifest weight of the evidence. Likewise, we have also determined that counsel's failure to renew the CrimR. 29(A) motion for acquittal does not constitute plain error, but rather, is subject to the waiver doctrine. Thus, we conclude that Appellant's trial counsel was not ineffective for failing to renew the motion for acquittal at the close of all the evidence because, had the motion been made, it would have been overruled by the trial court since the evidence presented by the state was more than sufficient to sustain Appellant's conviction. See, generally,State v. Fields (1995), 102 Ohio App.3d 284, 656 N.E.2d 1383. Accordingly, for the foregoing reasons, we overrule Appellant's fifth assignment of error and therefore affirm the judgment of the trial court.
 JUDGMENT AFFIRMED. *Page 21 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed. The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, J.: Concurs in Judgment and Opinion.
Kline, J.: Concurs in Judgment and Opinion as to Assignment of Error I, III, IV, V, and Concurs in Judgment Only as to Assignment of Error II.
[1] During trial, Mr. Alderman estimated that these events occurred at approximately 4:00 p.m., during daylight hours.
[2] Ricky Smith matched the description provided by the Alderman's of the other male in the pickup truck.
[3] After reviewing the transcript of the trial testimony, it appears that Eric Miller became confused at some point as to whether he was referring to the events of August 24, 2004, or 2005. This confusion remained unresolved even after further questioning on cross-examination and re-direct.
[4] This section deals with heirlooms, mementos, collector's items, and is not applicable to the facts presently before us.
[5] This section deals with personal effects and household goods and is likewise inapplicable.
[6] In Appellant's fourth assignment of error, Appellant's counsel represents to this Court that that the record does not clearly indicate whether or not the Crim. R. 29(A) motion for acquittal was renewed at the close of all evidence; however, our review of the record indicates that it was not renewed. *Page 1