OPINION *Page 2 
{¶ 1} Appellant Kathleen Bartunek appeals her theft conviction in the Court of Common Pleas, Stark County. The appellee is the State of Ohio. The relevant facts leading to this appeal are as follows.
 {¶ 2} In February 2005, appellant was hired as an employee of United Studios of America, a mobile photography service company headquartered in Massillon, Ohio. The company, owned and operated by Dean Nelson, generally sells portrait packages via kiosk arrangements at malls and grocery stores.
 {¶ 3} On March 7, 2005, appellant reported to the company office after making portrait sales at Tower City Mall and a Giant Eagle store in the Cleveland area. After several hours at the company office, the details of which were disputed at trial, appellant did not make her weekly "turn-in" of her receipts as required by United Studios. Appellant then left the building in a car with Texas license plates. Later that day, appellant and Nelson engaged in a telephone conversation, during which appellant indicated she had spent the cash portion of her receipts, a sum of approximately $2,500.00. According to Nelson, appellant wanted assurances that she would not lose her job before she would agree to return to the office. Tr. at 178. United Studios personnel thereafter attempted to contact appellant, including stopping by her residence in Cleveland, to no avail.
 {¶ 4} On March 11, 2005, United Studios filed a theft report with the Massillon Police Department. Several days later, Nelson and a group of about seven of his employees held a luncheon meeting at the BW-3 restaurant in Massillon. Coincidentally, appellant was at that location with another individual. Nelson immediately called the *Page 3 
police. Officer Dennis Smith responded and spoke with appellant at the restaurant. Appellant told the officer that she taken it upon herself to withhold cash for her commission, and that she had failed to turn in a sum of $2,433.00. Appellant was given a final opportunity to go back to Cleveland and return with the missing cash the next day. Appellant then left the restaurant, but subsequently failed to turn in the money as promised.
 {¶ 5} On March 28, 2006, the Stark County Grand Jury indicted appellant on one count of theft, R.C. 2913.02(A)(2), a felony of the fifth degree. Appellant pled not guilty, and the matter proceeded to a jury trial on August 29 and August 30, 2006. Appellant was found guilty, and thereafter was sentenced to nine months in prison and ordered to pay restitution.
 {¶ 6} On September 15, 2006, appellant filed a notice of appeal. She herein raises the following sole Assignment of Error:
 {¶ 7} "I. THE APPELLANT'S CONVICTION FOR THEFT IN VIOLATION OF R.C.2913.02(A)(2) WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE AND WAS NOT PROVEN BEYOND A REASONABLE DOUBT."
 I. {¶ 8} In her sole Assignment of Error, appellant contends her conviction is not supported by the sufficiency of the evidence and is against the manifest weight of the evidence. We disagree.
 Sufficiency Claim {¶ 9} In considering an appeal concerning the sufficiency of the evidence, our standard is as follows: " * * * [T]he inquiry is, after viewing the evidence in the light most *Page 4 
favorable to the prosecution, whether any reasonable trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt ." State v. Jenks (1991), 61 Ohio St.3d 259, 273,574 N.E.2d 492.
 {¶ 10} The statute in question, R.C. 2913.02(A)(2), mandates as follows: "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [b]eyond the scope of the express or implied consent of the owner or person authorized to give consent."
 {¶ 11} Furthermore, R.C. 2913.02(B)(2) requires the State to prove that the value of the stolen property is more than $500.00 and less than $5,000.00 in order to convict on a fifth degree felony theft charge. See, e.g., State v. Burton, Ross App. No. 06CA2892, 2007-Ohio-2320, ¶ 20.
 {¶ 12} The record in the case sub judice reveals that United Studios sales employees are divided into two groups: "presellers" and "passers." Tr. at 165-169. The presellers work a booth at a mall or store and sign up interested customers for portrait appointments. Id. The passers are the "back-end" personnel whose job it is to come back to the mall or store after the portrait session and deliver the finished pictures. Tr. at 167. Passers are also referred to as "portrait consultants" by United Studios. Tr. at 169. All United Studios sales employees are full "W-4" employees, not independent contractors. Tr. at 165. Every sales employee at United Studios has to start out as a preseller before being able to work as a passer/portrait consultant, as the company must ensure that the employee is reliable and punctual; otherwise, entire contracts with store chains could be lost due to unhappy customers. Tr. at 172. *Page 5 
 {¶ 13} On the morning of March 7, 2005, appellant, by then working as a passer/portrait consultant, came to the company office to do her receipt "turn-in." According to company owner Dean Nelson, although appellant was required, as were all portrait consultants, to turn in all of her weekly receipts (including cash, checks and credit card slips) in order to be issued her commission paycheck, appellant at that time offered to turn in the checks and credit card charges, but insisted on keeping the cash portion. Tr. at 173-176. Nelson, who was in a meeting, told his staff to direct her to do the full turn-in, but she refused. Tr. at 176. Appellant thereupon left without turning in any receipts, which totaled more than $10,000. Tr. at 177-178. (Nelson later explained trial exhibits showing that appellant collected $6,269.01 at the Tower City kiosk and $4,592.94 at Giant Eagle. Tr. at 190-191.) On the afternoon of March 7, 2005, appellant and Nelson spoke by telephone. According to Nelson, appellant told him she had "panicked" but wanted to keep her job. Tr. at 177. She admitted to Nelson that she had spent all the cash, an amount of approximately $2,500.00. Id. Nelson recollected the conversation ended as follows: "She said [that] without any kind of guarantee that she had her job back and that she wouldn't have to turn in the cash, she wasn't going to come in." Tr. at 178.
 {¶ 14} Subsequently, during the incident at the BW-3 restaurant on March 14, 2005, appellant turned in to the police an amount of $8,258.00 of the more than $10,000.00 in receipts she had kept, thus making her "shy about $2,200 in cash," according to Nelson. Tr. at 183. Although the officer gave her the opportunity to retrieve this remainder, appellant left and never returned. Tr. at 184. *Page 6 
 {¶ 15} Appellant essentially argues that she was ultimately entitled to her commission, and that given such mathematical discrepancies, this case should have been handled in a civil lawsuit. However, Nelson's testimony established that United Studios did not permit portrait consultants to unilaterally withhold their commissions, and this policy was emphasized to appellant in the days between her failed receipt "turn-in" and the filing of criminal charges. Furthermore, R.C.2913.61(A) provides that "[i]n any case in which the jury or court determines that the value of the property or services at the time of the offense was five hundred dollars or more, it is unnecessary to find and return the exact value, and it is sufficient if the finding and return is to the effect that the value of the property or services involved was five hundred dollars or more and less than five thousand dollars * * *." See, also, Burton, supra. We hold reasonable fact-finders could have found beyond a reasonable doubt that appellant, with purpose to deprive United Studios of its property, knowingly obtained or exerted control over the cash receipts in question beyond the scope of the express or implied consent of the company. It is not incumbent in this case to relegate appellant's conduct to a mere civil matter, where her conduct meets the elements of theft found in R.C. 2913.02. See State v.Alba (June 2, 1995), Sandusky App. No. S-94-018.
 Manifest Weight {¶ 16} In considering an appeal concerning the manifest weight of the evidence, our standard is as follows: "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new *Page 7 
trial ordered." State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717. See, also, State v. Thompkins (1997), 78 Ohio St.3d 380,678 N.E.2d 541. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175, 485 N.E.2d 717.
 {¶ 17} In addition to three other defense witnesses, appellant took the stand during her defense case, and presented a much different picture of what occurred pertaining to the receipt turn-in. She asserted that during her first two weeks on the job, when she worked as a "preseller" (as opposed to a portrait consultant), she never received a paycheck, "just the cash that was kept." Tr. at 340. She claimed she never filled out a W-4 form with United Studios or saw an employment contract for portrait consultants. Tr. at 330, 340. She testified she arrived at the United Studios office before 9 AM on March 7, 2005 with her paperwork and "well over $10,000" in receipts. Tr. at 341-342. She claimed no one "called her" to the turn-in counter, so she asked to see a manager. Tr. at 343. According to appellant: "I said I needed to turn in, and I was told that since I did an outstanding job that they would like me to come into the meeting to recognize me." Id. She then indicated that Nelson and other persons kept telling her wait, even though a turn-in would normally only take fifteen minutes. Tr. at 343-346. She testified she was fearful of Nelson, as she once saw him "attack" a photographer who was resigning his employment. Tr. at 346. Finally, according to appellant, she left at about 1:30 PM because she had portrait customers scheduled that afternoon in Cleveland. Tr. at 348-349.
 {¶ 18} Nonetheless, having reviewed the record in the case sub judice, we are unpersuaded by appellant's contention that the jury's verdict led to a manifest *Page 8 
miscarriage of justice. As we have often emphasized, the trier of fact, as opposed to this Court, is in a far better position to weigh the credibility of witnesses. State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212. The jury's verdict was not against the manifest weight of the evidence.
 {¶ 19} Appellant's sole Assignment of Error is therefore overruled.
 {¶ 20} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed.
 Wise, J. Farmer, P. J., and Delaney, J., concur. *Page 9 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed.
Costs to appellant. *Page 1