OPINION *Page 2 
{¶ 1} Appellant William Blackburn appeals his conviction, in the Guernsey County Court of Common Pleas, for burglary and theft. The Appellee is the State of Ohio. The relevant facts leading to this appeal are as follows.
 {¶ 2} On May 16, 2006, Garry Summers, a neighbor of Bill and Christine Vasko of Lore City, Ohio, observed a white pickup truck, equipped with a ladder rack, parked across the street from the Vasko residence. Summers also saw three men in the vicinity of the property, whose activity raised his suspicion. Summers took down the white pickup's license plate number and returned home to call 911.
 {¶ 3} Guernsey County Sheriff Deputies responded to the area and soon thereafter observed the white pickup going past the Vasko property. Deputy John Lowry began a vehicle pursuit of the truck, but temporarily lost sight of it. However, at the intersection of State Route 22 and Parker Road, Lowry came upon the scene of a crash involving the pickup. Lowry saw three individuals running away from the area. All three men, including one later identified as appellant, were soon apprehended.
 {¶ 4} The Vaskos and law enforcement officials thereupon determined that numerous items had been taken from the residence, including jewelry, money and an electronic game.
 {¶ 5} On June 8, 2006, appellant was indicted on one count of burglary, a felony of the second degree, and one count of theft, a felony of the fifth degree. Appellant pled not guilty to both counts, and the case proceeded to a jury trial on September 26 and 27, 2006. The jury thereafter returned a verdict of guilty on both counts. *Page 3 
 {¶ 6} Following a sentencing hearing on October 11, 2006, appellant was sentenced to five years in prison for burglary and one year in prison on the theft charge. The sentences were ordered to be served concurrently.
 {¶ 7} On November 9, 2006, appellant filed a notice of appeal. He herein raises the following four Assignments of Error:
 {¶ 8} "I. APPELLANT WAS DEPREIVED (SIC) OF HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WITH THE RESULT THAT HIGHLY PREJUDICIAL EVIDENCE WAS INTRODUCED AGAINST HIM.
 {¶ 9} "II. THE TRIAL COURT ERRED AS A MATTER OF LAW AND COMMITTED PLAIN ERROR WHEN IT DID NOT AFFORD THE COUNSEL FOR THE APPELLANT THE SAME OPPORTUNITY AS THE COUNSEL FOR THE APPELLEE TO QUESTION THE WITNESSES.
 {¶ 10} "III. THE JUDGMENT OF THE TRIAL COURT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN THAT [THE] GUERNSEY COUNTY PROSECUTING ATTORNEY FAILED TO PRODUCE SUFFICIENT EVIDENCE TO SUPPORT A CONVICTION.
 {¶ 11} "IV. THE APPELLANT WAS PREJUDICED IN THAT ALTHOUGH THE TRIAL COURT GRANTED HIS MOTION TO APPEAR AT TRIAL IN CIVILIAN CLOTHING ON SEPTEMBER 18, 2006, THE JURORS KNEW THAT HE WAS IN THE CUSTODY OF THE GUERNSEY COUNTY SHERIFF IN THAT WHILE LEAVING AND RETURNING TO THE COURT HOUSE FOR LUNCH MANY JURORS SAW THE DEFENDANT EXIT THE SHERIFF'S CRUSIER (SIC) IN RESTRAINTS. *Page 4 
 I. {¶ 12} In his First Assignment of Error, appellant contends he was deprived of the effective assistance of trial counsel. We disagree.
 {¶ 13} Our standard of review is set forth in Strickland v.Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Ohio adopted this standard in the case of State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373. These cases require a two-pronged analysis in reviewing a claim for ineffective assistance of counsel. First, we must determine whether counsel's assistance was ineffective; i.e., whether counsel's performance fell below an objective standard of reasonable representation and was violative of any of his or her essential duties to the client. If we find ineffective assistance of counsel, we must then determine whether or not the defense was actually prejudiced by counsel's ineffectiveness such that the reliability of the outcome of the trial is suspect. This requires a showing that there is a reasonable probability that but for counsel's unprofessional error, the outcome of the trial would have been different. Id.
 {¶ 14} Trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. State v. Sallie (1998), 81 Ohio St.3d 673, 675,693 N.E.2d 267. Furthermore, as an appellate court reviewing a claim of ineffective assistance, we "must keep in mind that different trial counsel will often defend the same case in different manners." State v. Samatar,152 Ohio App.3d 311, 787 N.E.2d 691, 2003-Ohio-1639, ¶ 88.
 {¶ 15} Appellant first argues that trial counsel was ineffective for failing to request a recross-examination of several of the State's witnesses, particularly Detective Ronald Pollock of the Guernsey Sheriffs Department. The record reveals that the prosecutor's *Page 5 
entire line of redirect questioning of Detective Pollock consisted of the following exchange, which we find raises no new issues adverse to appellant for which re-cross would have been necessary:
 {¶ 16} "BY MR. PADDEN:
 {¶ 17} "Q. You mentioned about the muddy print inside the house and there's no picture of it. Why not?
 {¶ 18} "A. The pictures I took didn't take. The ones Mr. Vasko took he had told me he thought he got the footprints on the video but he didn't.
 {¶ 19} "Q. And you were asked about fingerprinting the outside of the doorknob in the rain?
 {¶ 20} "A. Yes, sir.
 {¶ 21} "Q. Would the rain have anything to do with fingerprints?
 {¶ 22} "A. Humidity will ruin fingerprints.
 {¶ 23} "MR. PADDEN: I don't have any other questions." Tr. at 420-421.
 {¶ 24} Appellant also maintains trial counsel failed to more aggressively pursue a replay of portions of a videotape of the burglarized house prepared by the victim, Bill Vasko. However, appellant's trial counsel admittedly did make such a request; the court clearly ruled that the tape would only be replayed as was necessary to be "helpful" to the jurors. Tr. at 247. Appellant presently fails to articulate how further replay requests would have cleared this hurdle set by the trial judge.
 {¶ 25} We have recognized that a reviewing court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. State v. Robinson, Stark App. No. 2004 *Page 6 
CA 00320, 2005-Ohio-4843, ¶ 21, citing Bradley at 143. Having reviewed the record in its entirety, we find no showing that appellant was prejudiced by trial counsel's defense of the case on the grounds asserted in appellant's brief.
 {¶ 26} Appellant's First Assignment of Error is overruled.
 II. {¶ 27} In his Second Assignment of Error, appellant claims the court committed reversible error on the basis that it failed to afford his trial counsel the same opportunity to question witnesses as it afforded the prosecutor.
 {¶ 28} A trial court has the inherent authority to manage its own proceedings and control its own docket. Love Properties, Inc. v.Kyles, Stark App. No. 2006CA00101, 2007-Ohio-1966, ¶ 37, citing State exrel. Nat. City Bank v. Maloney, Mahoning App. No. 03 MA 139,2003-Ohio-7010, ¶ 5. Pursuant to Evid.R. 611(A), a trial court may impose reasonable restrictions upon the interrogation of witnesses where warranted. State v. Ross (1999), 135 Ohio App.3d 262, 275,733 N.E.2d 659. A ruling or order by the court affecting the conduct of trial will not be reversed unless the complaining party demonstrates a prejudicial abuse of discretion. Holm v. Smilowitz (1992), 83 Ohio App.3d 757,771-772, 615 N.E.2d 1047. The term "abuse of discretion" connotes more than an error of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 29} Appellant cites three examples of alleged disparate treatment by the trial court. First, the trial court advised appellant that equal time was being given to both sides but "please be summarizing." (Tr. at 380). After the prosecutor had a lengthy *Page 7 
opportunity to question accomplice Brett Abbott on recross-examination, counsel for appellant asked for brief recross and was advised on the record by the trial court, "It will have to be very brief but you may inquire. You're on recross also to permit equal time to each side. Very quickly." (Tr. at 389). Again, when appellant was to begin presenting the evidence in his case the trial court advised, "Gentlemen, you'll have to remember the most precious resource of this Court or any Court is its time. We are now at the second afternoon of trial and we've advised the jurors that the case may be able to be submitted to them today. So we need to proceed, if that's possible, in a timely manner." (Tr. at 430).
 {¶ 30} Upon review in light of the entire trial record, we are unpersuaded that the trial court's exercise of time control under the circumstances constituted an abuse of discretion or negatively affected the fairness of the trial. Appellant's Second Assignment of Error is overruled.
 III. {¶ 31} In his Third Assignment of Error, appellant contends his convictions for burglary and theft were not supported by the sufficiency of the evidence.[1] We disagree.
 {¶ 32} In considering an appeal concerning the sufficiency of the evidence, our standard is as follows: "* * * [T]he inquiry is, after viewing the evidence in the light most favorable to the prosecution, whether any reasonable trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt ." State v.Jenks (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492. *Page 8 
 {¶ 33} The first statute under which appellant was indicted is R.C.2911.12(A)(2), which reads as follows: "No person, by force, stealth, or deception, shall * * * [trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense."
 {¶ 34} The second statute in question, R.C. 2913.02(A)(1), mandates as follows: "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [w]ithout the consent of the owner or person authorized to give consent." Furthermore, R.C. 2913.02(B)(2) requires the State to prove that the value of the stolen property is more than $500.00 and less than $5,000.00 in order to convict on a fifth degree felony theft charge. See, e.g., State v. Burton, Ross App. No. 06CA2892,2007-Ohio-2320, ¶ 20. R.C. 2913.61(A) provides that "[i]n any case in which the jury or court determines that the value of the property or services at the time of the offense was five hundred dollars or more, it is unnecessary to find and return the exact value, and it is sufficient if the finding and return is to the effect that the value of the property or services involved was five hundred dollars or more and less than five thousand dollars * * *." See, also, Burton, supra.
 {¶ 35} The record in the case sub judice reveals that Garry Summers, a retired Illinois police officer now living in Guernsey County, observed a white pickup truck, equipped with a ladder rack, parked across the street from the residence of Bill and Christine Vasko near Lore City, Ohio. Summers also noticed a man walking around in *Page 9 
the vicinity of the pickup, wearing a dark jacket and ball cap. Tr. at 261. Summers turned his car into the Vaskos' driveway, at which time he observed two other men running around the outside of the home. Tr. at 263. One man was wearing a blue hooded sweatshirt; another man, whom Summers later identified as appellant, was wearing a "red jacket [,] like a hoodie jacket." Tr. at 264. These two men then ran in separate directions from the house. Tr. at 266. The activity aroused the suspicion of Summers, so he took down the white pickup's license plate number and returned home to call 911. Tr. at 267.
 {¶ 36} The record further indicates that Deputy John Lowry received a dispatch concerning a break-in shortly before 11 AM on May 16, 2006. As he approached the Vasko residence, he observed another officer, Deputy Terry McVey, speaking with witnesses. Just after Lowry exited his cruiser, he saw a white pickup truck, with a ladder rack and "a very quick cheap paint job," pass by the scene. Tr. at 159. After one of the witnesses indicated that the pickup was the suspect vehicle, Lowry gave chase, temporarily losing visual contact due to a couple of hills in the road. Tr. at 160. Lowry caught up at the intersection of State Route 22 and Parker Road, where the white pickup had crashed into an SUV. Tr. at 167. He activated his overhead lights and thereupon saw three males running from the scene in a northerly direction on Parker Road. Tr. at 169.
 {¶ 37} After requesting backup and medical assistance for an occupant of the SUV, Lowry grabbed his assault rifle and proceeded into the swampy area east of Parker Road, where the three males had headed. Tr. at 171-172. He particularly noticed one man with a shaved haircut and one man wearing a white T-shirt. After *Page 10 
backup officers arrived, these two men were ordered at gunpoint back to the road. Tr. at 177. At trial, Lowry identified the man with the shaved head as appellant; the man in the T-shirt was discovered to be accomplice Brett Abbott. Tr. at 177-178. A third man, Corey Abbott, was soon thereafter separately apprehended by another officer. Tr. at 180-181. After the apprehension of the three suspects, Lowry observed a red hooded sweatshirt on the seat of the crashed pickup. Tr. at 183. Appellant was found to have $400.00 in cash on his person. Tr. at 185.
 {¶ 38} The record further includes the trial testimony of the break-in victim, Bill Vasko. He described the items missing from his residence, including cash from a recent garage sale, a video game system, jewelry, and a pair of Oakley sunglasses. He stated the valuables taken had a value of greater than $500.00. Tr. at 232.
 {¶ 39} The jury also heard testimony from Brett Abbott, who, at the time of appellant's trial, had already been convicted for burglary and failure to stop at the scene of an accident for his role in the events of May 16, 2006. Brett admitted he had originally told law enforcement officials that appellant was wearing a red sweatshirt on the day in question, but at trial said he had lied about that observation. Tr at 332. Brett also admitted to telling law enforcement that appellant and Corey Abbott "* * * went around to the back door or the side door when they knocked on the front and no one answered and they went to the side." Tr. at 333.
 {¶ 40} This case thus represents a burglary and theft conviction without clear eyewitness testimony that the defendant was ever inside the burglarized home. Furthermore, Guernsey County Sheriff Detective Ronald Pollock conceded that there *Page 11 
was "absolutely no physical evidence that puts [appellant] in the Vaskos' residence * * *." Tr. at 417. However, Ohio law recognizes that circumstantial evidence is sufficient to prove the essential elements in a criminal case. State v. Willey (Nov. 24, 1998), Guernsey App. No. 98 CA 6, citing State v. Hopfer (1996), 112 Ohio App.3d 521, 558,679 N.E.2d 321. Likewise, "[participation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed." State v. Mendoza (2000), 137 Ohio App.3d 336, 342,738 N.E.2d 822, quoting State v. Stepp (1997), 117 Ohio App.3d 561, 568-569,690 N.E.2d 1342. It is also well-established that flight is admissible as evidence that tends to show consciousness of guilt. State v.Sines, Stark App. No. 2005CA00181, 2006-Ohio-1956, ¶ 41, citingSibron v. New York (1968), 392 U.S. 40, 66.
 {¶ 41} We also note the jury was instructed in this case on aiding and abetting. Tr. at 537-538. See R.C. 2923.03. Although a defendant may be charged in an indictment as a principal, the court may instruct the jury on complicity where evidence at trial reasonably supports a finding that the defendant was an aider or abettor. State v. Tucker, Cuyahoga App. No. 88231, 2007-Ohio-1710, ¶ 15, citing State v. Gonzales,151 Ohio App.3d 160, 2002-Ohio-4937, ¶ 51. Upon review of the aforecited trial evidence in a light most favorable to the prosecution, we hold reasonable fact-finders could have found that appellant committed the offenses of burglary and theft beyond a reasonable doubt, either as the principal offender or by aiding and abetting Brett and Corey Abbott.
 {¶ 42} Appellant's Third Assignment of Error is overruled. *Page 12 
 IV. {¶ 43} In his Fourth Assignment of Error, appellant contends the jurors were improperly allowed to see him in restraints during the trial.
 {¶ 44} Appellant notes that he successfully obtained permission from the trial court to appear in civilian clothing. Nonetheless, appellant claims, some of the jurors who were smoking outside saw him in restraints when the deputies returned to the courthouse after lunch breaks. Appellant's Brief at 12.
 {¶ 45} Our review on appeal is limited to those materials in the record that were before the trial court. See, e.g., State v.DeMastry, 155 Ohio App.3d 110, 119-120, 799 N.E.2d 229, 2003-Ohio-5588, citing State v. Ishmail (1978), 54 Ohio St.2d 402, 377 N.E.2d 500. Appellant's claim is not evident in the record before us, and appellant did not raise this issue to the trial judge when it could have been properly addressed.
 {¶ 46} Appellant's Fourth Assignment of Error is therefore overruled.
 {¶ 47} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Guernsey County, Ohio, is hereby affirmed.
 Wise, J. Gwin, P. J., and Hoffman, J., concur. *Page 13 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Guernsey County, Ohio, is affirmed. Costs to appellant.
[1] Appellant incorrectly commingles the concepts of sufficiency of the evidence and manifest weight of the evidence in the wording of his assigned error. See, e.g., State v. Shannon, Lake App. No. 2002-L-124, 2004-Ohio-1662, ¶ 15. Based on his arguments, however, we find he is raising a "sufficiency" issue. *Page 1