OPINION *Page 2 
{¶ 1} Appellant Douglas Samples appeals his conviction for aggravated robbery and burglary in the Stark County Court of Common Pleas. The relevant facts leading to this appeal, which involves two separate crimes, are as follows.
 The O'Reilly Home Robbery {¶ 2} On October 10, 2006, Philip O'Reilly went to bed at his 31st Street NW residence at about 9:00 PM, planning to arise before dawn for his next day shift at Hendrickson Trailer Company. At approximately 10:00 PM that evening, O'Reilly was awakened by the doorbell ringing. O'Reilly put on his robe and went to answer the front door. A man was standing on the porch holding the screen door open. The porch lights, as well as the living room and bedroom lights, were turned on.
 {¶ 3} After O'Reilly opened the door, the man on the porch struck him in the forehead with a pistol and pushed him backwards into the house. O'Reilly fell over a table and ended up upside down on the couch. With the pistol to O'Reilly's forehead, the intruder told O'Reilly he was going to "blow his fucking brains out." Tr. at 123.
 {¶ 4} The man said he wanted money. O'Reilly told him his wallet was in the bedroom. With the gun pointed at the back of his head, O'Reilly walked into the bedroom, took the money out of his wallet and handed it to the intruder. The man grabbed it, and flipped the mattress over looking for more money. The man then directed O'Reilly to kneel down and not to move or call the police, or he would kill him. O'Reilly thereafter heard the front screen door close.
 {¶ 5} O'Reilly determined that the armed intruder took $30.00, a driver's license, credit card, ATM card, social security card, time cards from work and a house key. Tr. *Page 3 
at 128. O'Reilly called 911, and two Canton police officers, along with their trained police dog, Gina, arrived a few minutes later. O'Reilly described the armed intruder as a white male, about 57", with a slim build and dark hair, wearing a stocking cap, light jacket and blue jeans. K-9 Gina began tracking, but the trail went cold at a nearby church parking lot. The officers additionally dusted O'Reilly's home for fingerprints, but found none.
 {¶ 6} The case sat unsolved for several months. On June 18, 2007, police found an abandoned full-size Chevrolet conversion van, which was believed to have been involved in a non-fatal shooting. The victim in that case was Appellant Samples, who had allegedly been shot by his girlfriend, Vicki Lorentz, who owned the van. Police processed the van for evidence, and found O'Reilly's driver's license and social security card among several other suspicious documents in a pouch in one of the seats. The documents were turned over to the detective bureau for follow-up against lists of recent crimes in the city.
 {¶ 7} Detective Dan McCartney thereupon noticed a resemblance between the victim of the van shooting, Appellant Samples, and O'Reilly's description of the armed intruder of October 10, 2006. McCartney asked appellant if he had been involved in the O'Reilly home invasion. Appellant denied any involvement. McCartney nonetheless put together a photo array for O'Reilly to review. O'Reilly identified photograph number 5, appellant, as the intruder.
 {¶ 8} As the investigations continued, McCartney was able to track down John McKinney as a person who had used one of the stolen credit cards found in the van. McKinney admitted that he was the person identified in a Wal-Mart surveillance tape as *Page 4 
buying a stereo with a stolen credit card, about three hours after the O'Reilly home invasion. Tr. at 194. He named appellant as the person who gave him a credit card to use in exchange for some crack. He further identified appellant in a photo line-up.
 The Barlow Home Burglary {¶ 9} On June 15, 2007, several shotguns and rifles were stolen from the Hartville, Ohio home of Brian Barlow while he was at work. Barlow was the former boyfriend of Vicki Lorentz, who was appellant's girlfriend and who subsequently shot appellant with one of the shotguns stolen from Barlow.
 {¶ 10} Vicki Lorentz was convicted in a separate case of the burglary at the Barlow home. According to Lorentz, she entered the Barlow home while no one was home. Because the dog, Scooby-Doo, recognized her, he did not bark or bite her. Lorentz ultimately removed five shotguns or rifles and a jar of change from Barlow's house. Appellant accompanied her, but Lorentz told different versions of whether appellant had stayed in the van.
 {¶ 11} Appellant admitted that he had ridden in the van with Lorentz to the Barlow home when the guns and change jar were stolen. Appellant denied knowing that Lorentz was stealing the items until after the fact.
 {¶ 12} On August 6, 2007, the Stark County Grand Jury indicted appellant on one count of aggravated robbery, R.C. 2911.01(A)(1), with a firearm specification, and one count of burglary, R.C. 2911.12(A)(3). The charges stemmed from the robbery of Philip O'Reilly on October 10, 2006 and the burglary at the home of Brian Barlow on June 15, 2007. See Bill of Particulars, August 29, 2007. *Page 5 
 {¶ 13} Appellant pled not guilty to the charges in the indictment. Prior to trial, appellant filed a notice of alibi alleging that on October 10, 2006, the date of the O'Reilly robbery, he was at a residence located at 1445 Edwards Avenue N.E., Canton, Ohio.
 {¶ 14} The trial began on December 19, 2007. The State called eight witnesses, including both victims, O'Reilly and Barlow. Both victims identified appellant in the courtroom. Appellant challenged his identification as the aggravated robber of O'Reilly and called two defense witnesses, one of them his brother, who attempted to establish his alibi that he was playing cards on Edwards Avenue at the time of the O'Reilly robbery. Additionally, appellant testified in his own behalf.
 {¶ 15} After hearing the evidence and receiving instructions from the trial court, the jury returned a verdict finding appellant guilty as charged in the indictment. Appellant received a sentence of ten years for the aggravated robbery conviction, along with three years on the gun specification. For the burglary conviction, appellant received a prison term of three years. Appellant was thus sentenced to a consecutive term of sixteen years. Judgment Entry, January 3, 2008.
 {¶ 16} On February 1, 2008, appellant filed a notice of appeal. He herein raises the following six Assignments of Error:
 {¶ 17} "I. THE APPELLANT'S DUE PROCESS RIGHT WERE (SIC) VIOLATED BECAUSE THE INDICTMENT FAILED TO STATE A MENS REA.
 {¶ 18} "II. THE TRIAL COURT ERRED IN NOT GIVING A LIMITING INSTRUCTION AFTER THE PROSECUTOR IMPLIED THE ACCUSED HAD CONVICTIONS THAT WERE WITHHELD FROM THE JURY. *Page 6 
 {¶ 19} "III. THE TRIAL COURT ABUSED ITS DISCRETION IN ALLOWING THE STATE TO IMPEACH ITS OWN WITNESS.
 {¶ 20} "IV. THE APPELLANT WAS DENIED HIS RIGHT TO A FAIR TRIAL DUE TO PROSECUTORIAL MISCONDUCT.
 {¶ 21} "V. THE APPELLANT WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.
 {¶ 22} "VI. THE TRIAL COURT'S FINDING OF GUILTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE."
 I. {¶ 23} In his First Assignment of Error, appellant contends his right to due process was violated because the aggravated robbery indictment fails to expressly charge a mens rea element. We disagree.
 {¶ 24} In State v. Colon, 118 Ohio St.3d 26, 2008-Ohio-1624, the Ohio Supreme Court held that an indictment for robbery in violation of R.C. 2911.02(A)(2), which omitted an essential element of the crime by failing to charge a mens rea (i.e., that the defendantrecklessly inflicted, attempted to inflict, or threatened to inflict physical harm), resulted in a structural error which was not waived by the defendant's failure to raise that issue in the trial court.
 {¶ 25} In the case sub judice, the indictment at issue reads as follows:
 {¶ 26} "In the Court of Common Pleas, Stark County, Ohio, of the Term of June in the year of our Lord two thousand seven. *Page 7 
 {¶ 27} "The Jurors of the Grand Jury of the County of Stark and State of Ohio, then and there duly impaneled, sworn and charged to inquire of and present all offenses whatever committed within the limits of said County, on their said oaths, in the name and by the authority of the State of Ohio, do find and present:
 {¶ 28} "That Douglas Lee Samples late of said county on or about the 10th day of October in the year of our Lord two thousand six, at the County of Stark, aforesaid, did, in attempting or committing a theft offense, as defined in Section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, have a deadly weapon on or about his person or under his control, to-wit: a firearm, and did either display the weapon, brandish it, indicate that he possessed it, or used said weapon, in violation of Section 2911.01(A)(1) of the Ohio Revised Code, contrary to the statute in such cause made and provided, and against the peace and dignity of the State of Ohio.
 {¶ 29} "* * *" Indictment, August 6, 2007.
 {¶ 30} Appellant accurately asserts that his indictment lacks a mens rea element. However, his due process argument is deficient in several respects. First, as we noted in State v. Vance, Ashland App. No. 2007-COA-035, 2008-Ohio-4763, ¶ 51, the Supreme Court has reconsidered its position in Colon I. See State v. Colon ("Colon II"),119 Ohio St.3d 204, 893 N.E.2d 169, 2008-Ohio-3749. In Colon II, the Court held:
 {¶ 31} "Applying structural-error analysis to a defective indictment is appropriate only in rare cases, such as Colon I, in which multiple errors at the trial follow the defective indictment. In Colon I, the error in the indictment led to errors that `permeate[d] the trial from beginning to end and put into question the reliability of the trial court in serving its function as a vehicle for determination of guilt or innocence.' Id . at ¶ 23, *Page 8 885 N.E.2d 917, citing State v. Perry, 101 Ohio St .3d 118, 2004-Ohio-297,802 N.E.2d 643, at ¶ 17. Seldom will a defective indictment have this effect, and therefore, in most defective indictment cases, the court may analyze the error pursuant to Crim. R. 52(B) plain-error analysis. * * *." Id. at ¶ 8, 893 N.E.2d 169.
 {¶ 32} In the case sub judice, appellant was charged and convicted of violating R.C. 2911.01(A)(1), unlike the defendant in the Colon cases, who was convicted under R.C. 2911.02(A)(2). See State v. Lucas, Stark App. No. 2007CA00292, 2009-Ohio-19, ¶ 135. The relevant statute in this case, R.C. 2911.01 (A)(1), provides as follows:
 {¶ 33} "No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised code, or in fleeing immediately after the attempt or offense, shall do any of the following:
 {¶ 34} "(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it ***."
 {¶ 35} The Tenth District Court of Appeals recently addressed the issue before us in State v. Ferguson, Franklin App. No. 07AP-640,2008-Ohio-3827.[1] The Court therein quoted the Ohio Supreme Court's holding in State v. Wharf (1999), 86 Ohio St.3d 375, 377,715 N.E.2d 172, that "`the General Assembly intended that a theft offense, committed while an offender was in possession or control of a deadly weapon, is robbery and no intent beyond that required for the theft offense must be proven. `"Ferguson at ¶ 39. The Ferguson Court concluded: "*** [B]ecause the Ohio Supreme Court has determined that R.C. 2911.02(A)(1) is a strict liability offense, and that the *Page 9 
deadly weapon element does not require the mens rea of recklessness, we find the provisions of that section of the robbery statute to be unaffected by the holding in Colon."
 {¶ 36} We thus find that the crucial issue under these circumstances is whether the State presented the intent "required for the theft offense." Wharf, supra. In the case sub judice, at the conclusion of the evidence, the jury was instructed that before they could find appellant guilty of aggravated robbery, they must find appellant knowingly committed the offense of theft:
 {¶ 37} "[COURT]: The defendant is charged with aggravated robbery. Before you can find the defendant guilty, you must find beyond a reasonable doubt that on or about the 10 (sic) day of October, 2006, and in Stark County, Ohio, the defendant knowingly obtained or attempted to obtain or fled immediately after obtaining or attempting to obtain property owned by another person without their consent and for the purpose of depriving them of that property * * *." Tr. at 289, emphasis added.
 {¶ 38} Later, the trial court also instructed the jury on the definition of a theft offense:
 {¶ 39} "[COURT]: Committing or attempting to commit a theft offense is one element of the crime of aggravated robbery. Before you can find that the defendant was committing or attempting to commit a theft offense, you must find beyond a reasonable doubt that the defendant, Douglas Lee Samples, knowingly obtained or attempted to obtain property owned by another without their consent and for the purpose of depriving them of that property.
 {¶ 40} "* * * *Page 10 
 {¶ 41} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result, or he is aware that his conduct will probably be of a certain nature." Tr. at 291-292, emphasis added.
 {¶ 42} In order to find plain error under Crim. R. 52(B), it must be determined, but for the error, the outcome of the trial clearly would have been otherwise. Long, supra, paragraph two of the syllabus. Even if the defendant satisfies this burden, an appellate court has discretion to disregard the error and should correct it only to "prevent a manifest miscarriage of justice." State v. Barnes (2002), 94 Ohio St.3d 21, 27,759 N.E.2d 1240 (citations omitted). Based on the foregoing, we find the holding of Colon I inapplicable and find no demonstration of plain error.
 {¶ 43} Appellant's First Assignment of Error is therefore overruled.
 II. {¶ 44} In his Second Assignment of Error, appellant contends the trial court erred in declining to give a limiting instruction to certain implications allegedly created by the prosecutor at trial. We disagree.
 {¶ 45} It is well-established that a trial court has broad discretion in instructing the jury. State v. Simpson, Franklin App. No. 01AP-757, 2002-Ohio-3717, ¶ 84, citing State v. Smith, Franklin App. No. 01AP-848, 2002-Ohio-1479. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. However, an error not raised in the trial court must be plain error for an appellate court to reverse. State v. Long, supra; Crim. R. 52(B). *Page 11 
 {¶ 46} During closing arguments, defense counsel stated the following concerning appellant's connection to physical evidence:
 {¶ 47} "ATTORNEY GRAHAM: Ah, they, they found these IDS in this van, but they never, they didn't come in here and show us the fruits of any investigation that put any credit cards, any firearms, anything of a criminal nature in this guy's [appellant's] pocket or in his house or in anything else that he had his hands on." Tr. at 328.
 {¶ 48} In rebuttal, the prosecutor responded as follows:
 {¶ 49} "ATTORNEY VANCE: About the credits cards, there are rules that I have to follow about what I'm allowed to tell you about the defendant's past. And what charges I'm allowed to bring in certain cases. Those rules I have to follow. So, about other crimes that the defendant may or may not be involved in, that may be why you didn't hear about things, and maybe why you did hear about things.
 {¶ 50} "So regarding other credit cards that may or may not have been found, that could be why you didn't hear about those." Tr. at 341.
 {¶ 51} Juries are presumed to follow and obey the limiting instructions given them by the trial court. State v. DeMastry,155 Ohio App.3d 110, 127, 799 N.E.2d 229, 2003-Ohio-5588, ¶ 84, citing State v.Franklin (1991), 62 Ohio St.3d 118, 127, 580 N.E.2d 1. In the case sub judice, a limiting instruction was given on the use of the prior criminal offenses of appellant:
 {¶ 52} "[THE COURT] Evidence was received that witnesses and the defendant were convicted of prior criminal offenses. That evidence was received only for a limited purpose. It was not received and you may not consider it to prove the character of the *Page 12 
witness and/or the defendant in order to show that the witness and/or defendant acted in conformity with that character. ***." Tr. at 288.
 {¶ 53} Furthermore, a standard jury instruction as to the value of closing arguments was given:
 {¶ 54} "[THE COURT] The evidence does not include the indictment, voir dire, opening statements or closing arguments of counsel. The opening statements and closing arguments of counsel are merely designed to assist you in understanding the evidence and the law. They are not evidence." Tr. at 284.
 {¶ 55} Upon review, we hold the instructions given by the trial court were proper, and any remaining concerns resulting from the inferences allegedly created by the prosecutor, based on a lack of more expansive limiting instructions regarding the issue of the other credit cards, do not rise to the level of plain error under the circumstances of this case. See State v. Cooperrider (1983), 4 Ohio St.3d 226, 227,448 N.E.2d 452.
 {¶ 56} Appellant's Second Assignment of Error is therefore overruled.
 III. {¶ 57} In his Third Assignment of Error, appellant contends the trial court erred in allowing the State to effectively impeach its own witness, Vicki Lorentz. We disagree.
 {¶ 58} A trial court has the inherent authority to manage its own proceedings and control its own docket. State v. Blackburn, Guernsey App. No. 06CA37, 2007-Ohio-4282, ¶ 28, citing Love Properties, Inc. v.Kyles, Stark App. No. 2006CA00101, 2007-Ohio-1966, ¶ 37 (additional citations omitted). The admission or exclusion of evidence rests in the sound discretion of the trial court. State v. Sage (1987),31 Ohio St.3d 173, 180, 510 N.E.2d 343. Specifically, Evid. R. 607(A) states: "The credibility of a witness *Page 13 
may be attacked by any party except that the credibility of a witness may be attacked by the party calling the witness by means of a prior inconsistent statement only upon a showing of surprise and affirmative damage. ***."
 {¶ 59} However, an error not raised in the trial court must be plain error for an appellate court to reverse. Long, supra; 53 Ohio St.2d 91; Crim. R. 52(B). In order to prevail under a plain error analysis, appellant bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error.Long. Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Id. at paragraph three of the syllabus.
 {¶ 60} In the case sub judice, when the prosecutor reached the point of asking Lorentz about appellant's role in the Barlow burglary, she apparently began retracting earlier statements she had made, such as those pertaining to appellant's alleged role in standing by the house and taking the guns from Lorentz as she handed them outside. See Tr. at 234. The record indicates that the prosecutor did not seek to declare Lorentz a hostile witness before attempting to impeach her with a statement previously made to police detectives. See Tr. at 240-241. Nonetheless, without a defense objection to Lorentz's testimony on this issue, we have no further record to review under the guidelines of Evid. R. 607(A). See State v. Manzell, Stark App. No. 2006CA00258,2007-Ohio-4076, ¶ 25.
 {¶ 61} Upon review, we are not inclined to apply the doctrine of plain error under the circumstances presented. Appellant's Third Assignment of Error is therefore overruled. *Page 14 
 IV. {¶ 62} In his Fourth Assignment of Error, appellant argues that prosecutorial misconduct deprived him of a fair trial. We disagree.
 {¶ 63} A conviction will be reversed only where it is clear beyond a reasonable doubt that, absent the prosecutor's comments, the jury would not have found the defendant guilty. State v. Benge, 75 Ohio St.3d 136,141, 661 N.E.2d 1019, 1996-Ohio-227. Furthermore, isolated comments by a prosecutor are not to be taken out of context and given their "most damaging meaning." See Donnelly v. DeChristoforo (1974), 416 U.S. 637,647, 94 S.Ct. 1868, 40 L.Ed.2d 431. Generally, a prosecutor's conduct at trial is not grounds for reversal unless that conduct deprives the defendant of a fair trial. State v. Loza (1994), 71 Ohio St.3d 61, 78,641 N.E.2d 1082.
 {¶ 64} Appellant's prosecutorial misconduct claim centers again on the prosecutor's rebuttal remarks during closing arguments, made following defense counsel's suggestion that "[the police] didn't find any credit cards in that van." Tr. at 328. See appellant's second Assignment of Error, infra.
 {¶ 65} In rebuttal thereto, the prosecutor responded as follows:
 {¶ 66} "ATTORNEY VANCE: About the credits cards, there are rules that I have to follow about what I'm allowed to tell you about the defendant's past. And what charges I'm allowed to bring in certain cases. Those rules I have to follow. So about other crimes that the defendant may or may not be involved in, that may be why you didn't hear about things, and maybe why you did hear about things.
 {¶ 67} `So regarding other credit cards that may or may not have been found, that could be why you didn't hear about those." Tr. at 341. *Page 15 
 {¶ 68} Appellant also raises, under his claim of prosecutorial misconduct, the State's impeachment of its witness, Vicki Lorentz. See Appellant's Assignment of Error III, infra. Appellant additionally maintains the prosecutor improperly asked Lorentz about a prior concealed weapons conviction on appellant's record.
 {¶ 69} The record indicates there was no defense objection or request for limiting instruction in relation to the aforesaid; as such, appellant's argument is subject to a plain error analysis. Plain errors or defects will not be noticed unless they affect the outcome of the trial and only under exceptional circumstances to prevent a miscarriage of justice. Crim. R. 52(B); Long, supra, at paragraph three of the syllabus
 {¶ 70} Turning to the pertinent evidence presented, we note appellant was charged with the aggravated robbery of Phillip O'Reilly, who identified appellant as the perpetrator. It was only after appellant was shot by his girlfriend, Vicki Lorentz, nine months later that her Chevrolet conversion van was found abandoned. In the van were found several suspicious documents and miscellaneous identification cards. A driver's license and social security card in the batch belonged to O'Reilly. Photographs of the van and its contents including the documents were introduced at the trial with no objection from appellant. John McKinney testified that he used a credit card provided by appellant to purchase a stereo at a nearby Wal-Mart shortly after the O'Reilly home break-in. In regard to the Barlow burglary, it was unrefuted that appellant accompanied Lorentz in the van, and the jury was instructed on aiding or abetting.
 {¶ 71} Upon review of the aforesaid evidence, while we indeed find the cited instance of prosecutorial conduct in closing arguments noted in appellant's brief to be *Page 16 
questionable, we do not conclude the conduct in toto prejudicially affected appellant's substantial rights. Loza, supra.
 {¶ 72} We therefore find no reversible error based on the basis of prosecutorial misconduct. Appellant's Fourth Assignment of Error is overruled.
 V. {¶ 73} In his Fifth Assignment of Error, appellant argues he was deprived of the effective assistance of trial counsel. We disagree.
 {¶ 74} Our standard of review is set forth in Strickland v.Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Ohio adopted this standard in the case of State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373. These cases require a two-pronged analysis in reviewing a claim for ineffective assistance of counsel. First, we must determine whether counsel's assistance was ineffective; whether counsel's performance fell below an objective standard of reasonable representation and was violative of any of his essential duties to the client. If we find ineffective assistance of counsel, we must then determine whether or not the defense was actually prejudiced by counsel's ineffectiveness such that the reliability of the outcome of the trial is suspect. This requires a showing that there is a reasonable probability that but for counsel's unprofessional error, the outcome of the trial would have been different. Id. Trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. State v. Sallie (1998),81 Ohio St.3d 673, 675, 693 N.E.2d 267.
 {¶ 75} Appellant's arguments stem from the same trial events which form the bases for appellant's second, third, and fourth assigned errors. In other words, appellant *Page 17 
argues that trial counsel was ineffective for failing to object to the prosecutor's impeachment of Vicki Lorentz, including a question to her regarding appellant's prior concealed weapons conviction, and the prosecutor's rebuttal to closing argument when he "implied" there were other offenses by appellant not disclosed to the jury.
 {¶ 76} Ohio courts have recognized that objections tend to disrupt the flow of a trial and are often considered technical and bothersome by the fact-finder; hence, competent counsel may reasonably hesitate to object. See State v. Jackson, Cuyahoga App. No. 86105, 2006-Ohio-174, ¶ 88, citing State v. Campbell, 69 Ohio St.3d 38, 53, 1994-Ohio-492, and Jacobs, Ohio Evidence (1989), at iii-iv. Furthermore, it is well-established that tactical or strategic trial decisions, even if ultimately unsuccessful, do not generally constitute ineffective assistance. State v. Carter (1995), 72 Ohio St.3d 545, 558,651 N.E.2d 965.
 {¶ 77} Having reviewed the present "failure to object" arguments against the backdrop of the entire record, we are unpersuaded that the outcome of the trial would have been different had the objections been raised by trial counsel. We therefore find appellant was not deprived of the effective assistance of trial counsel.
 {¶ 78} Appellant's Fifth Assignment of Error is overruled.
 VI. {¶ 79} In his Sixth Assignment of Error, appellant contends his conviction for aggravated robbery and burglary is against the manifest weight of the evidence and is not supported by sufficient evidence. We disagree. *Page 18 
 Manifest Weight {¶ 80} Our standard of review on a manifest weight challenge to a criminal conviction is stated as follows: "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717. See also, State v. Thompkins (1997),78 Ohio St.3d 380, 678 N.E.2d 541. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175, 485 N.E.2d 717.
 {¶ 81} In the case sub judice, in regard to the aggravated robbery charge, the jury heard O'Reilly's recollection of the gunpoint nighttime invasion of his home. O'Reilly further made an in-court identification of appellant as the perpetrator, although he failed to recall seeing during the break-in the tattoo appellant has on his right hand. Jeffrey Ramser, a crime scene investigator for the city of Canton, described the subsequent processing of the Chevrolet van owned by Vicki Lorentz, appellant's girlfriend, in which vehicle law enforcement officials found O'Reilly's stolen driver's license and social security card. Testimony was also taken from Detective Dan McCartney, who described his investigation following the discovery of O'Reilly's identification documents in the van. His investigation revealed that O'Reilly's stolen credit card had been used at a nearby Wal-Mart about three hours after the robbery, and that the man using it, later identified as John McKinney, was observable in a store surveillance photograph. McKinney himself took the stand, describing how he was approached by appellant to use a stolen *Page 19 
credit card to buy something at the store, in exchange for supplying appellant with crack cocaine in the amount of one third of the value of whatever was purchased.
 {¶ 82} In regard to the burglary charge, the State first called the Marlboro Township police chief, Ronald Devies, who investigated the incident. The State then called the victim of that offense, Brian Barlow, who in June 2007 was living on Pontius Street in Hartville, Ohio, along with his dog, Scooby-Doo, a shepherd-chow mix. Barlow was a former boyfriend of Vicki Lorentz, who would occasionally stop by the house, but who did not have permission to be there when Barlow was not home. Barlow indicated that Lorentz was thus familiar with Scooby-Doo, who otherwise would have been very protective of the house. On June 15, 2007, Barlow noted his house had been broken into, and all of his shotguns and rifles were missing. Barlow testified that two shotguns were recovered "at the scene" following the incident later that month wherein Lorentz shot appellant. Lorentz herself also testified as a prosecution witness, although she appeared to have begun downplaying appellant's role in the Barlow burglary once she took the stand. She conceded, however, that she had told detectives that she and appellant went to the Barlow residence to get the guns because "[Appellant] Doug wanted to get them." Tr. at 241.
 {¶ 83} Defense counsel called three witnesses, one of which was appellant. The first, Dwaine Samples, appellant's brother, and the second, Gary Payne, a friend, attempted to buttress appellant's alibi that he spent the entire evening of October 10, 2006 playing cards at Payne's residence. Appellant presently points out that there was no fingerprint evidence presented, and that the State relied on implicating evidence in *Page 20 
the form of testimony from two felons who had both admitted to participating in the offenses to some degree. Appellant's Brief at 17.
 {¶ 84} Nonetheless, upon review of the record in this case as summarized above, we find the jury did not clearly lose its way and create a manifest miscarriage of justice requiring that appellant's conviction be reversed and a new trial ordered.
 Sufficiency of the Evidence {¶ 85} In reviewing a claim of insufficient evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
 {¶ 86} As previously noted, appellant in the case sub judice was charged and convicted of violating R.C. 2911.01 (A)(1).[2] This statute provides:
 {¶ 87} "No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
 {¶ 88} "(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it * * *."
 {¶ 89} In the case sub judice, the State presented evidence that the victim, O'Reilly, had identified appellant in a police lineup as the man who forced his way into *Page 21 
the house. O'Reilly also identified appellant at trial as that person. O'Reilly described the intruder as carrying an automatic handgun, silver in color, with which O'Reilly was struck and which was held to the back of his head during the break-in. O'Reilly further observed appellant forcibly take the wallet and its contents, some of which were later discovered by police in the van owned by appellant's girlfriend.
 {¶ 90} A jury is free to believe all, part, or none of any witness' testimony. State v. Mossburg, Van Wert App. No. 15-06-10, 2007-Ohio-3343, ¶ 46, citing State v. Antill (1964), 176 Ohio St. 61, 197 N.E.2d 548. Viewing the evidence in a light most favorable to the prosecution, we hold reasonable triers of fact could have found, beyond a reasonable doubt, that appellant committed the crime of aggravated robbery under R.C. 2911.01(A)(1).
 {¶ 91} Appellant's Sixth Assignment of Error is therefore overruled.
 {¶ 92} For the foregoing reasons, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed.
By: Wise, J. Farmer, P. J., and Gwin, J., concur. *Page 22 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed. Costs assessed to appellant.
[1] The defendant in Ferguson was convicted of both aggravated robbery and robbery. Appellant in the case sub judice was convicted of aggravated robbery and burglary.
[2] The focus of appellant's "sufficiency of the evidence" argument is essentially on the aggravated robbery conviction. See Appellant's Brief at 16-18. We will structure our analysis accordingly. See App. R. 16(A). *Page 1