**The STATE of Ohio, Appellee,**

v.

**SINGFIELD, Appellant.**

[Cite as *State v. Singfield,* 183 Ohio App.3d 625, 2009-Ohio-4172.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 24576.

Decided Aug. 19, 2009.

626

Sherri Bevan Walsh, Summit County Prosecuting Attorney, and Heaven R. DiMartino, Assistant Prosecuting Attorney, for appellee.

J. Dean Carro, Appellate Review Office, University of Akron School of Law, for appellant.

WHITMORE, Judge.

{¶ 1} Defendant-appellant, Phillip Singfield, appeals from his convictions and sentence in the Summit County Court of Common Pleas. This court affirms in part and reverses in part.

## I

{¶ 2} At approximately 1:30 a.m. on July 26, 2008, Staci Smith and her cousin, Natea Proctor, drove to a bar on Newton Street. Smith parked her vehicle in the bar's lot, and she and Proctor remained in the vehicle to eat some food that they had just purchased. While they were eating, a man approached the vehicle and asked the women for a light. Subsequently, the man produced a handgun and threatened to shoot the women while he demanded their purses. Smith and Proctor handed over their purses, and the man walked away, entered a nearby car, and drove off. Smith and Proctor went inside the bar and called 911 to report the incident. Both Smith and Proctor provided the police with descriptions of their assailant.

{¶ 3} Smith later saw the man who she believed had robbed her while riding the bus and again while walking down a street near her home. On the second occasion, Smith telephoned Proctor. Proctor, who was at Smith's house, was able to look outside and see the man. Proctor also identified him as the person who had robbed her. Smith began to follow the man and called 911. Upon their arrival, the police arrested Singfield, the man whom both Smith and Proctor had identified as their assailant.

{¶ 4} On October 3, 2008, a grand jury indicted Singfield on the following counts: (1) two counts of aggravated robbery, in violation of R.C. 2911.01(A)(1), both with firearm specifications, in violation of R.C. 2941.145; (2) two counts of robbery, in violation of R.C. 2911.01(A)(1), (2), both with firearm specifications; (3) having a weapon while under disability, in violation of R.C. 2923.13(A)(2), (3); (4) theft, in violation of R.C. 2913.02(A)(1), (4); and (5) petty theft, in violation of R.C. 2913.02(A)(1), (4). The matter proceeded to a jury trial, and on December

15, 2008, the jury found Singfield guilty on all counts and the specifications linked to those counts. On December 16, 2008, the trial court orally sentenced Singfield, including a prison term for each specification, for a total sentence of 14 years.

{¶ 5} On December 22, 2008, Singfield filed a motion to modify his sentence, arguing that his firearms specifications were allied offenses for which the trial court should not have imposed separate sentences upon him. The trial court held a hearing on the motion and issued another oral sentence. The trial court (1) merged Singfield's sentences for his two counts of robbery with firearm specifications and his counts for theft and petty theft, (2) increased his two aggravated-robbery sentences by one year apiece and ordered them to run consecutively for a total period of ten years, (3) issued three-year sentences on each of the two firearm specifications attached to Singfield's two aggravated robbery convictions, ordering them to run concurrently with one another but consecutively with the sentence for aggravated robbery, and (4) ordered a one-year consecutive sentence for having a weapon while under disability. Accordingly, Singfield still received a total sentence of 14 years. The court journalized Singfield's sentence on December 29, 2008.

{¶ 6} Singfield now appeals from his convictions and sentence and raises three assignments of error for our review.

## II

### Assignment of Error Number One

Appellant Singfield's indictment was defective under the Ohio Constitution, Article I, Section 10 as the state failed to include a mental culpability element for aggravated robbery in the indictment or at trial.

{¶ 7} In his first assignment of error, Singfield argues that his two convictions for aggravated robbery should be reversed because neither he nor the jury was made aware of the mens rea element applicable to that offense. Specifically, he argues that the omission amounts to structural error. We agree.

{¶ 8} "When an indictment fails to charge a mens rea element of a crime and the defendant fails to raise that defect in the trial court, the defendant has not waived the defect in the indictment." *State v. Colon* ("*Colon I*"), 118 Ohio St.3d 26, 2008-Ohio-1624, 885 N.E.2d 917, syllabus. That is, a defendant may raise a defective-indictment claim for the first time on appeal. Id. Appellate courts generally apply a plain-error analysis when considering a defective-indictment argument on appeal. *State v. Colon* ("*Colon II*"), 119 Ohio St.3d 204, 2008-Ohio-3749, 893 N.E.2d 169, at ¶ 7–8. If, however, a defective indictment "result[s] in multiple errors that are inextricably linked to the flawed indictment," a structural-error analysis is appropriate. Id. at ¶ 7. "[S]tructural errors

permeate the trial from beginning to end and put into question the reliability of the trial court in serving its function as a vehicle for determination of guilt or innocence." *Colon I* at ¶ 23. In *Colon I*, the Supreme Court concluded that structural error existed where Colon's indictment and the court's jury instructions omitted the mens rea of recklessness for the crime of robbery and the state treated robbery as a strict-liability offense in closing argument. Id. at ¶ 29–31.

{¶ 9} A person cannot be guilty of an offense unless he possesses "the requisite degree of culpability for each element" of that offense. R.C. 2901.21(A)(2). "When the section [defining an offense] neither specifies culpability nor plainly indicates a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense." R.C. 2901.21(B). Accordingly, "recklessness is the catchall culpable mental state for criminal statutes that fail to mention any degree of culpability." *State v. Lozier*, 101 Ohio St.3d 161, 2004-Ohio-732, 803 N.E.2d 770, at ¶ 21.

{¶ 10} R.C. 2911.01(A)(1) provides:

No person, in attempting or committing a theft offense, * * * shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it.

The theft element of R.C. 2911.01(A)(1) is not at issue in this case, as neither party challenges this court's conclusion that the mens rea of knowingly applies to that portion of the statute. See *State v. Robinson*, 9th Dist. No. 21583, 2004-Ohio-963, 2004 WL 384211, at ¶ 14–16. Instead, this case concerns the deadly-weapon element of R.C. 2911.01(A)(1). Both Singfield and the state agree that Singfield's indictment essentially tracked R.C. 2911.01(A)(1)'s language such that no mens rea was included as to the deadly-weapon element. They disagree over the impact of that omission. According to Singfield, the mens rea of recklessness applies to R.C. 2911.01(A)(1)'s deadly weapon-element, and structural error resulted from its omission. According to the state, R.C. 2911.01(A)(1) is a strict-liability offense with regard to its deadly-weapon element, so no mens rea was required. Contrary to Singfield's argument, this court has never held that the mens rea of recklessness applies to the current version of R.C. 2911.01(A)(1)'s deadly-weapon element.[1] This issue constitutes a matter of first impression for this court.

---

1. Neither of the cases that Singfield cites bears upon this issue. *State v. Hardges*, 9th Dist. No. 24175, 2008-Ohio-5567, 2008 WL 4724692, involved subsection (A)(3) of R.C. 2911.01, not subsection (A)(1). *Hardges* at ¶ 10. *State v. Gulley* (June 17, 1992), 9th Dist. No. 15137, 1992 WL 140006, involved former R.C. 2911.01(A)(1), which did not require an offender to display, brandish, use, or otherwise indicate to his weapon to commit aggravated robbery. *Gulley*, at

{¶ 11} Nearly all Ohio's appellate courts have considered the issue of whether R.C. 2911.01(A)(1) is a strict-liability offense with regard to its deadly-weapon element. A majority of the courts have concluded that strict liability applies. See *State v. Samples*, 5th Dist. No. 2008CA00027, 2009-Ohio-1043, 2009 WL 597612, at ¶ 35–42; *State v. Haney*, 180 Ohio App.3d 554, 2009-Ohio-149, 906 N.E.2d 472, at ¶ 16–17; *State v. Jackson*, 6th Dist. No. L–07–1281, 2008-Ohio-6805, 2008 WL 5341007, at ¶ 15; *State v. Smith*, 2d Dist. Nos. 21463 and 22334, 2008-Ohio-6330, 2008 WL 5104685, at ¶ 72–73; *State v. Briscoe*, 8th Dist. No. 89979, 2008-Ohio-6276, 2008 WL 5084720, at ¶ 20; *State v. Jelks*, 3d Dist. No. 17–08–18, 2008-Ohio-5828, 2008 WL 4831480, at ¶ 20; *State v. Ferguson*, 10th Dist. No. 07AP–640, 2008-Ohio-3827, 2008 WL 2932005, at ¶ 50. Two courts have concluded, however, that R.C. 2911.01(A)(1) is not a strict-liability offense and that the mens rea of recklessness applies to its deadly-weapon element. *State v. Jones*, 7th Dist. No. 07–MA–200, 2008-Ohio-6971, 2008 WL 5427964, at ¶ 50; *State v. Lester*, 1st Dist. No. C–070383, 2008-Ohio-3570, 2008 WL 2781033, at ¶ 21–23. Three of the foregoing cases, *Briscoe*, *Jelks*, and *Lester*, are currently before the Ohio Supreme Court pending its review of this issue. For the reasons that follow, we must conclude that R.C. 2911.01(A)(1) is not a strict-liability offense and that the mens rea of recklessness applies to its deadly-weapon element.

{¶ 12} In *State v. Wharf*, the Ohio Supreme Court considered the deadly-weapon element of robbery under R.C. 2911.02(A)(1). That statute provides:

No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall * * * [h]ave a deadly weapon on or about [his] person or under [his] control.

R.C. 2911.02(A)(1). In concluding that R.C. 2911.02(A)(1) is a strict-liability offense with regard to its deadly-weapon element, the Supreme Court held that the ability to have a deadly weapon under one's possession or in one's control was all that the statute required. *Wharf*, 86 Ohio St.3d at 377–378, 715 N.E.2d 172. The court reasoned that "by employing language making mere possession or control of a deadly weapon, as opposed to actual use or intent to use, a violation, it is clear to us that the General Assembly intended that R.C. 2911.02(A)(1) be a strict liability offense." Id. at 378, 715 N.E.2d 172. The court also pointed to the Legislative Service Commission's Comment as evidence that the legislature intended R.C. 2911.02(A)(1) to punish the potential for harm to persons as well as any actual harm, due to the inherently dangerous nature of deadly weapons. Id. at 378–379, 715 N.E.2d 172. Because mere access to such a weapon could quickly

---

*2. Moreover, *Gulley* was abrogated by *State v. Wharf* (1999), 86 Ohio St.3d 375, 715 N.E.2d 172.

escalate a relatively minor situation to a fatal one, the court concluded that the legislature intended R.C. 2911.02(A)(1) to be a strict-liability offense, governing mere access to weapons during the commission or attempted commission of theft offenses. Id. at 380, 715 N.E.2d 172.

{¶ 13} In *Ferguson,* 2008-Ohio-3827, 2008 WL 2932005, the Tenth District relied partially upon *Wharf* by analogy to conclude that R.C. 2911.01(A)(1) is also a strict-liability offense. *Ferguson,* 2008 WL 2932005, at ¶ 45–50. *Ferguson* acknowledged:

> Arguably, there is dicta in *Wharf* suggesting that [the brandish, use, display, or indicate] element may distinguish, for purposes of analyzing the requisite criminal intent, the offenses of aggravated robbery under R.C. 2911.01(A)(1) and robbery under R.C. 2911.02(A)(1). See *Wharf,* supra, [86 Ohio St.3d] at 379, 715 N.E.2d 172 ("A violation of R.C. 2911.02[A][1] will also be found if the offender has a deadly weapon on or about his person, or under his control, while fleeing after such offense or attempt. Thus, no use, display, or brandishing of a weapon, or intent to do any of the aforementioned acts, is necessary according to the plain language of the statute").

Id. at ¶ 45. *Ferguson* concluded, however, that R.C. 2911.01(A)(1) was a strict-liability offense because (1) the Seventh District Court of Appeals had already applied *Wharf,* 86 Ohio St.3d 375, 715 N.E.2d 172, to R.C. 2911.01(A)(1) by analogy and had reached that conclusion in *State v. Kimble,* 7th Dist. No. 06MA190, 2008-Ohio-1539, 2008 WL 852074, at ¶ 29; and (2) Section 511.01(A)(1) of the Ohio Jury Instructions contained a comment from the committee, indicating that the committee believed *Wharf* applied to R.C. 2911.01(A)(1) by analogy. Id. at ¶ 46–50. We find fault with *Ferguson* on several grounds.

{¶ 14} First, after the Tenth District issued its decision in *Ferguson,* 2008-Ohio-3827, 2008 WL 2932005, the Seventh District reevaluated its position in *Kimble* and rejected *Kimble*'s conclusion that R.C. 2911.01(A)(1) is a strict-liability offense. *Jones,* 2008-Ohio-6971, 2008 WL 5427964, at ¶ 49–50 (holding that the mens rea of recklessness applies to the deadly-weapon element of R.C. 2911.01(A)(1)). As further discussed below, in its post-*Colon I* decision, the Seventh District held that *Wharf* could not apply by analogy to R.C. 2911.01(A)(1) because, unlike 2911.02(A)(1), 2911.01(A)(1) contained the additional requirement that an offender brandish, use, display, or indicate his deadly weapon. Id. at ¶ 47. Accordingly, to the extent that *Ferguson* relies upon *Kimble* to reach its conclusion, its conclusion is based on faulty law that the Seventh District has since abandoned.

{¶ 15} Second, *Ferguson,* 2008-Ohio-3827, 2008 WL 2932005, erroneously holds that *Wharf* supports the conclusion that R.C. 2911.01(A)(1) is a strict-liability offense with regard to its deadly-weapon element. In concluding that robbery

under R.C. 2911.02(A)(1) was a strict-liability offense, *Wharf* specifically reasoned:

> [Under R.C. 2911.02(A)(1) ], *no use, display, or brandishing of a weapon, or intent to do any of the aforementioned acts, is necessary* according to the plain language of the statute. Had the legislature so intended, it certainly could have required a level of conduct more severe than it did in order to show a violation of the statute. Thus, by employing language making mere possession or control of a deadly weapon, *as opposed to actual use or intent to use,* a violation, it is clear to us that the General Assembly intended that R.C. 2911.02(A)(1) be a strict liability offense.

(Emphasis added.) *Wharf,* 86 Ohio St.3d at 378, 715 N.E.2d 172. Unlike R.C. 2911.02(A)(1), the statute at issue in this case, 2911.01(A)(1), does require an offender to brandish, use, display, or indicate his deadly weapon to complete the offense of aggravated robbery. R.C. 2911.01(A)(1) requires a level of conduct on the part of an offender beyond that of mere possession or control. Indeed, its additional elements of brandish, use, display, or indicate uses the exact language identified by the Supreme Court in *Wharf* as language that would remove the statute from the realm of strict liability. Id.; *State v. Freeman,* 7th Dist. No. 08MA81, 2009-Ohio-3052, 2009 WL 1813791, at ¶ 21. Therefore, *Ferguson's* conclusion that *Wharf* supports a strict-liability interpretation of R.C. 2911.01(A)(1) is erroneous.

{¶ 16} Third, unlike the Tenth District, we are not persuaded by the comment from the Ohio Jury Instructions Committee on this issue. In setting forth the jury instruction for aggravated robbery under R.C. 2911.01(A)(1), the comment to Section 511.01(A)(1) provides the following:

> It is not necessary to prove "recklessness" or any specific mental state with regard to the deadly weapon element of the offense of robbery. *State v. Wharf* (1999), 86 Ohio St.3d 375[, 715 N.E.2d 172]. The Committee believes this decision applies by analogy to R.C. 2911.01(A)(1).

We recognize that the Ohio Jury Instructions can be helpful in interpreting a statute. See *State v. Gardner,* 118 Ohio St.3d 420, 2008-Ohio-2787, 889 N.E.2d 995, at ¶ 97 (Lanzinger, J., dissenting) ("The Ohio Jury Instructions, while not binding legal authority, are helpful as an example of the generally accepted interpretation of the aggravated burglary statute in Ohio"). Yet the instructions and their comments are helpful only insofar as the law supports them. See *Starcher v. Chrysler Corp.* (1984), 15 Ohio App.3d 57, 59, 15 OBR 86, 472 N.E.2d 736, fn. 1, (noting that an Ohio Jury Instruction was erroneous where it lacked any citation to legal authority and no law in support of the requirement it espoused existed). As previously noted, *Wharf* does not support the proposition that R.C. 2911.01(A)(1) is a strict-liability offense. Consequently, we find no

merit in the Ohio Jury Instruction Committee's unsupported Comment to the contrary. See id.

{¶ 17} We agree with the conclusions of the First and Seventh District that R.C. 2911.01(A)(1) is not a strict-liability offense and that the mens rea of recklessness applies to its deadly-weapon element. See *Lester*, 2008-Ohio-3570, 2008 WL 2781033, at ¶ 21–23; *Jones*, 2008-Ohio-6971, 2008 WL 5427964, at ¶ 50. R.C. 2911.01(A)(1)'s plain language, requiring action on the part of an offender rather than mere access to a weapon, supports the foregoing conclusion. *Freeman*, 2009-Ohio-3052, 2009 WL 1813791, at ¶ 22; *Wharf*, 86 Ohio St.3d at 378, 715 N.E.2d 172. As previously noted, if a statute does not specify culpability or plainly indicate a purpose to impose strict liability, "recklessness is sufficient culpability to commit the offense." R.C. 2901.21(B). Because Singfield's indictment did not include the mens rea of recklessness in either of his aggravated-robbery counts, his indictment was defective. *Colon I* at ¶ 16–19. The remaining question is whether his defective indictment resulted in structural error. *Colon II* at ¶ 7–8 (discussing the applicability of plain-error analysis versus structural-error analysis in the context of defective indictments).

{¶ 18} Our review of the record convinces us that structural error exists in this case. Apart from Singfield's defective indictment, the record reflects that the trial court's instructions to the jury on aggravated robbery did not refer to any applicable mens rea with regard to R.C. 2911.01(A)(1)'s deadly-weapon element. Moreover, the prosecutor indicated the following in closing argument:

> [W]hat I need to be able to show is that while [Singfield] was committing a theft offense, * * * he had a deadly weapon * * * [and] he displayed it, brandished it, indicated that he possessed it. * * * Those are the things that I need to prove. I proved the theft offense. I proved that he brandished or displayed the gun, indicated that he had it. * * *
>
> Then he's charged with two counts of robbery. * * * And the difference in th[e] case [of robbery is] there's a difference of culpability called recklessness and you'll have an instruction about that.

The prosecutor expressly indicated that unlike robbery, the crime of aggravated robbery did not require the state to prove recklessness. As previously noted, structural error exists when "errors permeate the trial from beginning to end and put into question the reliability of the trial court in serving its function as a vehicle for determination of guilt or innocence." *Colon I* at ¶ 23. Based on all of the foregoing, we agree with Singfield that structural error exists in this case with regard to his aggravated-robbery convictions. *Freeman*, 2009-Ohio-3052, 2009 WL 1813791 at ¶ 30–37. Singfield's first assignment of error is sustained, and his aggravated-robbery convictions, including the firearm specifications attached to those convictions, are reversed pursuant to that determination.

Assignment of Error Number Two

Appellant Singfield's convictions were against the manifest weight of the evidence in violation of Section 3(B)(3), Article IV of the Ohio Constitution, thus creating a manifest miscarriage of justice because the greater weight of the evidence demonstrated that appellant Singfield did not commit the offenses.

{¶ 19} In his second assignment of error, Singfield argues that his convictions for aggravated robbery and having a weapon while under disability are against the manifest weight of the evidence. Based on our resolution of Singfield's first assignment of error, we need not address his manifest-weight argument as far as it concerns his aggravated-robbery convictions and the firearm specifications attached to those convictions. App.R. 12(A)(1)(c). We limit our discussion to Singfield's challenge to his conviction for having a weapon while under disability.

{¶ 20} When considering a manifest-weight argument, the court "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten* (1986), 33 Ohio App.3d 339, 340, 515 N.E.2d 1009. A weight-of-the-evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541. Further, when reversing a conviction because the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the fact-finder's resolution of the conflicting testimony. Id. Therefore, this court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717; see also *Otten,* 33 Ohio App.3d at 340, 515 N.E.2d 1009.

{¶ 21} R.C. 2923.13(A)(2) provides, "Unless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if * * * [t]he person * * * has been convicted of any felony offense of violence." "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶ 22} At trial, Singfield stipulated that he had been convicted of attempted robbery, a felony offense of violence for purposes of R.C. 2923.13(A)(2). He does

not take issue with his stipulation on appeal. Instead, he argues that his conviction is against the manifest weight of the evidence because the state's witnesses gave inconsistent testimony, and his alibi evidence demonstrated that he could not have been the individual who attacked Smith and Proctor.

{¶ 23} Smith testified that she and Proctor arrived at the parking lot of a bar on Newton Street at approximately 1:00 a.m. and remained in the vehicle to eat. She further testified that at about 1:30 a.m., a man approached the passenger's side of the vehicle and asked for a light. According to Smith, she exited the driver's seat, walked around the vehicle, and offered the man a light. The man produced a firearm and demanded Smith's and Proctor's purses, threatening to shoot them if they failed to comply. Once the man left, Smith and Proctor were able to go into the bar and call the police. Smith described the gun that was used to threaten her in great detail. According to Smith, the parking lot was well lit on one side, but more dimly lit where she had parked the vehicle. Smith described her assailant as being around 5'8" or 5'9", black, and overweight with "fat roll[s] in his head." Smith also indicated that her assailant had a raspy voice.

{¶ 24} Smith testified that weeks after the foregoing incident, she saw her assailant on two separate occasions. First, Smith saw her assailant while riding the bus. Smith recognized him by sight and by sound because she heard him speak to a nearby bus passenger in his raspy voice. Smith testified that she immediately became "nervous, shaking, [and] sweating" when she saw the man. Smith reported the sighting to the police after she exited the bus. Second, Smith saw her assailant walking down a street near her house. Smith testified that the man greeted her when he walked by, such that she heard his raspy voice again. Thereafter, Smith followed the man while calling the police on her cell phone. Police arrested the man, later identified as Singfield, shortly thereafter.

{¶ 25} Proctor also testified that she and Smith were eating in a parked vehicle sometime after 1:00 a.m. when a man approached the passenger's side of the vehicle and asked for a light. According to Proctor, she exited the vehicle to give the man a light, and he pointed a gun at her. Proctor testified that Smith had exited the driver's side of the vehicle and was in the process of walking around to the passenger's side when the man pointed his gun. The man then demanded their purses, took the purses, and left. Proctor testified that she was in a state of shock during the incident and was focused on her assailant's gun. According to Proctor, she did not think that the parking lot had any lighting. Proctor reported to police that she believed her assailant was black and heavy-set. Proctor testified that Smith called her and told her to look outside on the day that Smith saw their assailant walking down the street. Proctor stated that when she saw the man, "I just had this feeling. * * * I just started sweating and I

watched him, and I seen him when he walked past * * * and I was, like, oh, my God, that's him."

{¶ 26} Detective James Phister testified that he interviewed Smith and Proctor shortly after they were attacked on July 26, 2008. Detective Phister testified that Smith described her assailant as a black male, 27 to 33 years of age, 5'8" to 5'9" tall, and 250 to 275 pounds with a very raspy voice. He specified that Smith said that the suspect "was so fat that he actually had rolls in his head." As to Proctor, Detective Phister testified that her description of the suspect was "very close" to Smith's description. Specifically, Proctor described the suspect as a black male, 27 to 33 years of age, 5'7" to 5'9" tall, and 200 to 235 pounds with a raspy voice. Detective Phister testified that Singfield was "slightly taller" than Smith and Proctor described, but otherwise matched their description.

{¶ 27} Singfield argues that his conviction is against the manifest weight of the evidence because Smith and Proctor varied in their exact description of the events and the physical description of their assailant. Singfield notes that Smith and Proctor each claimed to have been the one to get out of their vehicle to offer their assailant a light on the night of the incident and disagreed as to the lighting conditions of the parking lot where the crime occurred. The record reflects that both witnesses were focused on the gun that their assailant used during his attack. Considering the stressful nature of the situation, it would not be surprising for the victims to be confused about certain details of their attack. Moreover, Detective Phister testified that it is common for people to vary somewhat in their physical descriptions of others and that because the parking lot in which Smith and Proctor were attacked was built at an angle, a suspect could appear taller or shorter depending on where he was standing in relation to a victim. The jury was aware of the differences in Smith's and Proctor's testimony, but found them to be reliable witnesses. We cannot say, based on these minor differences, that the jury lost its way in convicting Singfield. *Otten*, 33 Ohio App.3d at 340, 515 N.E.2d 1009.

{¶ 28} As to Singfield's alibi evidence, Singfield's mother, Stephanie Singfield, and his friends, LaShawn Pryor and Byron Jackson, testified that Singfield attended a party at his mother's house on the night of July 25, 2008, through the early morning hours of July 26, 2008, when the attack on Smith and Proctor occurred. Each witness admitted, however, that Singfield was not in their sight the entire time they were at the party, and Pryor testified that she was "pretty lit up" that night. Further, Stephanie Singfield admitted that her home was only 1.78 miles away from the bar and parking lot where Smith and Proctor were attacked. Based on the foregoing, we cannot conclude that the jury erred in rejecting Singfield's alibi evidence and concluding that he was the individual who assailed Smith and Proctor with a handgun. Singfield's argument that his

conviction for having a weapon under disability is against the manifest weight of the evidence lacks merit.

### Assignment of Error Number Three

The trial court erred when it resentenced appellant Singfield to a greater period of incarceration than originally imposed without articulating reasons for the increased penalty as required by the Due Process Clause of the Fourteenth Amendment and in violation of Ohio law.

{¶ 29} In his third assignment of error, Singfield argues that the trial court erred when it resentenced him in response to his motion to modify his sentence and imposed longer sentence terms upon him for each of his aggravated-robbery counts. Because this court has reversed Singfield's convictions for aggravated robbery, including the firearm specifications attached to those convictions, and this case must be remanded for further proceedings, this assignment of error is moot, and we decline to address it. App.R. 12(A)(1)(c).

### III

{¶ 30} Singfield's first assignment of error is sustained, and his convictions for aggravated robbery, including the firearm specifications attached to those convictions, are reversed pursuant to that determination. Singfield's second assignment of error is moot to the extent that it challenges those convictions and overruled to the extent that it does not. Finally, Singfield's third assignment of error is moot. The judgment of the Summit County Court of Common Pleas is affirmed in part and reversed in part, and the cause is remanded for further proceedings consistent with the foregoing opinion.

Judgment affirmed in part
and reversed in part,
and cause remanded.

DICKINSON, P.J., concurs.

CARR, J., dissents.

CARR, JUDGE, dissenting.

{¶ 31} I respectfully dissent. I agree with the majority of appellate courts, which have concluded that aggravated robbery in violation of R.C. 2911.01(A)(1) is a strict-liability offense with regard to its deadly-weapon element. I believe that the legislature intended to punish more harshly those offenders who display, brandish, indicate possession of, or use a weapon during the commission or attempted commission of a theft offense, irrespective of any culpable mental state with regard to the weapon. Accordingly, I would conclude that the trial court did

not commit any error.  I would affirm his convictions for aggravated robbery, as well as the companion firearm specifications.